**James and Joyce FERRELL, et al., Plaintiffs-Appellees,**

v.

**Samuel R. PIERCE, Secretary of Department of Housing and Urban Development, et al., Defendants-Appellants.**

Nos. 83–2038, 83–2677.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1984.

Decided July 31, 1984.

As Amended Sept. 14, 1984.

Coffey, Circuit Judge, dissented and filed opinion.

**CUDAHY, Circuit Judge.**

In 1973, the plaintiffs filed a nationwide class action against the Secretary of Housing and Urban Development (the "Secretary"), alleging that the Department of Housing and Urban Development ("HUD") was required by the National Housing Act (the "Act") and other federal housing legislation to provide mortgage foreclosure relief to homeowners who had received HUD insured mortgages. In August, 1976, the class action was settled and a consent decree was entered by the district court. In 1979, in response to allegations that HUD was violating the 1976 settlement agreement, the parties entered into a new settlement agreement, the "Amended Stipulation." The Amended Stipulation was also entered as a consent decree. In 1980, Congress passed legislation which amended the Act and HUD made a motion to modify the 1979 Amended Stipulation to permit HUD, without restriction, to implement the 1980 legislation. The district court denied modification and assessed attorneys fees against HUD under the Equal Access to Justice Act. The Secretary appeals from both of these rulings. We affirm.

## I. BACKGROUND

Congress has declared as a policy "the realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family." 42 U.S.C. § 1441.[1] Under various provisions of the National Housing Act, HUD has the authority to offer mortgage insurance to individuals purchasing homes. The plaintiff class, made up of individuals who had purchased, or who would purchase, homes with HUD insurance, claimed that HUD was statutorily obligated to adopt a

Nicholas S. Zeppos, Dept. of Justice Appellate Staff, Dept. of Justice, Civil Div., Washington, D.C., for defendants-appellants.

William P. Wilen, Legal Asst. Foundation of Chicago, Chicago, Ill., for plaintiffs-appellees.

Before CUDAHY and COFFEY, Circuit Judges, and GIBSON, Senior Circuit Judge.*

* Honorable Floyd R. Gibson, Senior Circuit Judge for the Eighth Circuit, is sitting by designation.

1. Congress has announced similar policies relating to the nation's housing problems since 1937. *See* Pub.L. No. 93–383, § 201(a), 88 Stat. 653 (1937), as amended by Pub.L. No. 97–35 § 322(c), 95 Stat. 402 (1981) codified at 42 U.S.C. § 1437; Pub.L. No. 90–448, § 1601, 82 Stat. 601 (1968) as amended by Pub.L. No. 93–383, § 801(1) & (2), 88 Stat. 721 (1974), codified at 42 U.S.C. § 1441a. Section 1441a explicitly expresses dissatisfaction with the administration of the housing laws. *See generally, United States v. Winthrop Towers,* 628 F.2d 1028 (7th Cir.1980); 42 U.S.C. § 5301 (1976).

high-quality mortgage foreclosure relief program. *See* 12 U.S.C. § 1715*u* (1976).[2]

HUD operates several insurance programs in which it insures mortgages on property owned by low and moderate income individuals, elderly persons, handicapped persons and persons displaced by government action. 12 U.S.C. §§ 1709, 1715*z*. This insurance makes it possible for people who might not otherwise be able to obtain financing to purchase housing. Apparently, in addition to mortgage insurance, the HUD programs provide various other incentives and benefits to participating mortgagees and mortgagors. Participating mortgagees must be approved by the Secretary "as responsible and able to service the mortgage properly." 12 U.S.C. § 1709(b)(1). *See also,* 12 U.S.C. §§ 1715*l* (d)(1), 1715*z*(i)(2).

Congress anticipated that persons requiring government assistance to acquire housing might also have difficulty keeping current in mortgage payments. These individuals are unlikely to have substantial liquid assets or large amounts of savings, and therefore even relatively minor and temporary economic problems may cause these people to default. Thus, Congress authorized HUD, in 12 U.S.C. § 1715*u* (1976), to operate a mortgage foreclosure relief program. In essence, § 1715*u* authorized HUD, after receiving notice of default and for the purpose of avoiding foreclosure, to pay off the mortgage debt, take an assignment of the mortgage from the mortgagee and work out a payment plan (or forebearance agreement) with the mortgagor. Because the mortgagee assigns the mortgage to HUD, this type of foreclosure relief is commonly referred to as an "assignment program."

When the plaintiffs brought suit in 1973, HUD was not actively operating any mortgage foreclosure relief program. To understand fully the sort of problems which foreclosure relief might avoid, we shall recount the allegations made by several of the named plaintiffs.

For example, James and Joyce Ferrell alleged that in 1971 they purchased a home in Chicago for $22,600. The mortgage was insured by HUD under a program designed for low to moderate income purchasers, 12 U.S.C. § 1709 (1976). The Ferrells lived in the home with their four minor children. In mid-1972 Joyce Ferrell became ill and was forced to resign from her employment, where she had been earning $550 per month. Because of this drop in the family's income, the Ferrells were not able to pay their August 1972 mortgage payment of $220 until September 30, 1972. On October 13, they paid an additional amount of $220 representing the September payment. Eight days later these two payments were returned to the Ferrells as insufficient to bring the mortgage current. On November 11 the Ferrells sent $660 for August, September and October, and on November 25, they sent another $220, believing that these payments would bring the mortgage current. Meanwhile, however, Unity Savings and Loan Association, the mortgagee, had filed, on November 6th, a foreclosure action; hence, the November payments were also returned to the Ferrells. The allegations of the complaint assert that James Ferrell informed Unity Savings in August that his wife was ill but that in rejecting subsequent payments Unity Savings made no inquiry about the reasons for the late payments.

A major problem encountered by the plaintiffs, although not detailed in the Ferrells' allegations, is that in falling temporarily behind in payments—even slightly— the mortgagor may incur significant late charges and costs. For example, plaintiff William McCluster was $36 behind in his mortgage payments when he was informed by his mortgagee's attorneys that

---

**2.** The details of the allegations of the complaint and the working of the mortgage insurance programs and foreclosure relief program may be found in the district court's opinions in this case, reported *Brown v. Lynn* at 385 F.Supp. 986 (N.D.Ill.1974) (denying motion to dismiss); 392 F.Supp. 559 (N.D.Ill.1975) (denying reconsideration); 560 F.Supp. 1344 (N.D.Ill.1983) (denying motion to modify Amended Stipulation).

McCluster would have to pay $621.40 in attorneys fees and costs, plus his next mortgage payment in advance, to bring his mortgage up to date. McCluster fell behind in his payments because of a two month lag between the termination of his employment and the initial receipt of his old-age social security benefits. The plaintiffs also alleged that numerous improper practices of mortgagees were causing hardship for HUD-insured mortgagors and thus frustrating the realization of the nation's housing goals.

The relief sought in the Second Amended Complaint related to two alleged failures of HUD. First, the plaintiffs sought an order requiring HUD to monitor and regulate mortgagees to prevent "premature and precipitous" foreclosures. Second, the plaintiffs requested an order requiring HUD to provide foreclosure relief. The original settlement agreement and Amended Stipulation provided for both categories of relief sought by the plaintiffs.

The original settlement and Amended Stipulation provided only for an assignment program. The original settlement, entered as a consent decree with court approval on July 29, 1976, incorporated a detailed plan for a HUD assignment program. The HUD plan had been adopted in May 1976 and applied to all home mortgages fully insured by HUD. The plan prescribed in detail the conditions under which a mortgage assignment would be accepted, when forebearance would be appropriate and the procedure for obtaining relief under the program. The 1976 settlement agreement required HUD to adopt "explicit and expeditious" time limits for processing assignment requests. HUD also agreed to inform participating mortgagees that they could not begin foreclosure until HUD had decided whether to take an assignment. Violation of this provision by a mortgagee could lead to suspension or termination of the mortgagee's participation in HUD mortgage insurance programs.

The 1976 settlement did not finally resolve the dispute between the parties because the plaintiffs believed that HUD was not processing assignment requests in accordance with the settlement. Apparently, a high percentage of assignment applications were being erroneously denied. The plaintiffs threatened to seek contempt citations against the Secretary and other HUD officials. These efforts were dropped, however, when the parties reached agreement on August 2, 1979, on the terms of the Amended Stipulation. The Amended Stipulation contained specific and significant substantive and procedural constraints on HUD's operation of the assignment program. Specifically, HUD agreed, in Paragraph 3 of the Amended Stipulation (reproduced below) that it would operate the assignment program for five years in accordance with its newly-revised handbook and that it would not, during the five year term of the Amended Stipulation, curtail the "basic rights" of participating mortgagors:

3. HUD Handbook 4191.2, attached hereto as Appendix A, shall constitute binding instructions for implementation of the assignment program subsequent to the entry of this order. The Department shall administer the assignment program substantially in accordance with the terms of said Handbook. Said Handbook is incorporated hereto [sic] by reference and supersedes HM 76–43 and HM Mortgagee Letter 76–9, which documents were contained in this Court's order of July 29, 1976, as Exhibits A and B. The provisions of the Handbook may be modified in accordance with the Department's usual procedures. However, during the term of this Amended Stipulation the Department will not make any modification which would curtail the basic rights of mortgagors under the program now in existence. The Department will give notice to plaintiffs' counsel prior to final action on any modification.

HUD also agreed in Paragraph 14 of the Amended Stipulation to continue to provide, after expiration of the Amended Stipulation's five year term, foreclosure relief in the form of the assignment program or an "equivalent substitute." Paragraph 14 provided, in full:

14. Except as provided in this paragraph, the rights and obligations created by this Amended Stipulation shall terminate five years from date of execution. The termination of the Department's specific obligations under this Amended Stipulation shall not diminish or compromise the Department's obligation construed under the National Housing Act, as amended, and Section 2 of the Housing Act of 1949 and Section 2 of the Housing and Urban Development Act of 1968 to provide foreclosure avoidance relief for mortgagors in temporary financial distress, and the Department shall provide assistance or relief in the form of the present assignment program or an equivalent substitute to permit mortgagors in default on their mortgages to avoid foreclosure and to retain their homes during periods of temporary financial distress.

HUD also agreed to report monthly on the operation of the program, enabling the district court (Judge Hubert L. Will) to monitor HUD's compliance with the Amended Stipulation.

Meanwhile, HUD was working on legislation to implement what it considered a cheaper method of providing foreclosure relief. This new program, Temporary Mortgage Assistance Payments ("TMAP") was originally proposed for Congressional enactment by HUD in 1979. The 1979 proposal was withdrawn but TMAP was reintroduced in 1980. At that time the plaintiffs sought to have HUD held in contempt of court. The plaintiffs claimed that by proposing TMAP, HUD was violating its agreement to operate the assignment program under the Amended Stipulation. Apparently, HUD's 1981 budget proposal indicated that it would take no assignments that year if TMAP were adopted. (If TMAP were not adopted, HUD expected to accept several thousand assignments.)

TMAP, in principle, differs from the assignment program in only one respect: in TMAP HUD does not take an assignment of the defaulted mortgage. Instead, HUD makes payments on a temporary basis directly to the mortgagee so as to avoid foreclosure. Thus, a TMAP program could, if so designed, be just as advantageous to the mortgagor as the assignment program but would require lower cash outlays by HUD. Of course, under TMAP the identity of the mortgageholder would not change, as it does under the assignment program.

The HUD defendants explain in their brief to this court that the "primary impetus behind the TMAP legislation was the skyrocketing cost of the assignment program." Brief for Appellants at 11. Cost savings result from TMAP because "under TMAP HUD does not have to pay out the entire balance of the mortgage but instead need only make temporary payments on the mortgage." Id. In both situations, HUD's outlays are fully secured: under the assignment program HUD acquires the mortgage as security while under TMAP all payments made to the mortgagee become a second lien on the mortgaged property. According to Judge Will's comments in the record, the operation of no program is the most expensive option of all because, with no foreclosure relief available, HUD is often required to pay insurance claims on mortgages after they are foreclosed. With that procedure HUD becomes the owner of property which is often vacant and vandalized.

The district court held a hearing on the plaintiffs' contempt motion on March 26, 1982. At that point, Judge Will was somewhat agitated because in his view HUD had at the same time entered into an agreement to operate the assignment program and, without informing the court or the plaintiffs, sought legislation to replace the assignment program with TMAP. Judge Will was persuaded, however, not to hold the defendants in contempt. Several factors convinced him not to find the introduction of TMAP to be contumacious. In his opening statement, Justice Department Attorney Alphonse M. Alfano told the court that the TMAP legislation "would leave the assignment program *intact* until August 2, 1984." Tr. of Proceedings, March 26, 1980

at 8. (Hereinafter cited as "Contempt Hearing") (emphasis added). Mr. Alfano further stated that "the Assignment Program as it presently is implemented, *will not be changed.*" *Id.* at 10 (emphasis added). He explained that the assumptions upon which the budget submissions showing no assignments in 1981 were based were "no longer valid." *Id.* at 11–12. He further argued that a contempt finding would be inappropriate because the Amended Stipulation did not explicitly address the question of HUD's authority to introduce legislation to eliminate the obligations to which it had just agreed. Mr. Alfano further argued that HUD officials, because of their "good faith obligations under the consent decree," [3] had advocated changes in the TMAP legislation "so that it could be implemented as an equivalent substitute for the Assignment Program." Counsel also acknowledged, however, that if Congress were to enact legislation inconsistent with continued operation of the consent decree, HUD would come back to Judge Will and seek modification of the consent decree.[4]

The only witness to testify at the contempt hearing was Lawrence B. Simons, HUD's Assistant Secretary for Housing and Federal Housing Commission. He was the official with responsibility for administering HUD mortgage insurance programs, and he approved the Amended Stipulation before HUD agreed to it. At the contempt hearing, Mr. Simons repeatedly represented that TMAP would be "an equivalent program" to the assignment program and that HUD planned to operate TMAP concurrently with the assignment program, not as a substitute. Mr. Simons also testified that it was not HUD's intent, as its budget figures showed, to completely eliminate assignments because "any action that we took would have to comply with that consent decree." Contempt Hearing at 75.

Mr. Simons pointed out that the TMAP legislation was "permissive, discretionary with the Secretary, and ... before implementation of it, it was the intention to come before this Court to see if it is consistent with the decree." *Id.* at 77.

The essence of Mr. Simon's testimony is contained in his responses to two questions from the district court:

> THE COURT: Are you telling me ... you visualize a TMAP program which would be no less advantageous to the mortgagor than the Assignment Program, but would simply cause the mortgagee to continue to act as mortgagee rather than HUD becoming the assigned mortgagee?
>
> THE WITNESS: That is exactly correct, your Honor.
>
> THE COURT: ... I suppose, if I understand you correctly, no program will be attempted to be implemented unless you first have a concurrence from us that the program is not in derogation of the decree.
>
> THE WITNESS: That is absolutely correct.

*Id.* at 83.

Thereafter, on September 30, 1980, Congress passed the Housing and Community Development Act of 1980, Pub.L. No. 96–399, 94 Stat. 1614 (1980). Section 341 of the 1980 Act amended 1715*u* and, for the first time, authorized HUD to offer a TMAP program. Judge Will carefully analyzed the new § 1715*u*. 560 F.Supp. at 1350–54. The clarity and precision of Judge Will's analysis make a detailed reiteration of it here unnecessary. In short, § 1715*u*(a) authorizes HUD to operate TMAP under the same eligibility criteria as contained in prior law and in the handbook implementing the Amended Stipulation's assignment program. *See* 560 F.Supp. at

---

**3.** A HUD staff attorney wrote a memo concerning TMAP to HUD's general counsel in which he stated that HUD's "proposing a statutory replacement for the Assignment Program which is not its substantial equivalent could be interpreted by the Court as evidence of bad faith." Record Item 255, Exhibit 9.

**4.** We do not have before us a situation in which Congress has made further compliance with the consent decree statutorily impossible. See Part II–B *infra.* Such a case might present a problem altogether different from the one before us.

1350–51. In fact, Judge Will found that 1715*u*(a)(2) essentially codified certain provisions of the handbook. Section 1715*u*(b) authorizes HUD to continue to operate the assignment program. "The conditions under which assignment is now available are identical to those under the previous statute, except for the further requirement that assignments are now to be accepted only when the Secretary determines that TMAP is 'inappropriate.'" 560 F.Supp. at 1353.

After the 1980 TMAP legislation became law, HUD promptly published proposed implementing regulations for public notice and comment. The proposed regulations constitute a comprehensive program for implementation of TMAP. Instead of implementing the regulations immediately, HUD brought them to the district court seeking modification of the Amended Stipulation. In its "Motion to Modify November 8, 1979 Order Approving Settlement to Reflect Change in the Law," HUD proposed addition of the following paragraph to the Amended Stipulation:

> 16. Nothing in this Amended Stipulation affects or interferes in any way with the Department's implementation of the TMAP program as authorized by Public Law 96–399.

In support of the motion, HUD argued that nothing in the 1979 agreement explicitly precluded it from adding a new program such as TMAP. HUD claimed that under the newly proposed regulations it would continue to operate the Amended Stipulation's assignment program "intact." *See* Memorandum in Support of Defendants' Motion to Modify November 8, 1979 Order Approving Settlement to Reflect Change in the Law at 7–8. The defendants further argued that even if HUD agreed in the Amended Stipulation not to operate TMAP in the fashion proposed, the changes in the

law represented by the 1980 legislation required the district court to modify the consent decree. *See System Federation No. 91 v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961).[5]

The district court received numerous briefs and held an evidentiary hearing on HUD's motion to modify the consent decree. After consideration, the district court denied HUD's motion to modify the Amended Stipulation. Judge Will found that many of the provisions of the proposed regulations were contrary to HUD's agreement to preserve the plaintiff class's "basic rights" under Paragraph 3 of the Amended Stipulation, and that the new regulations did not provide for an equivalent form of foreclosure relief within the Amended Stipulation.[6]

The regulations found by the district court to be inconsistent with the Amended Stipulation involved interest rates charged on assistance, the date of the onset of interest accrual, repayment schedules, eligibility requirements for foreclosure relief and the amount of discretion HUD retained in administering certain aspects of TMAP. Significantly, the district court found that the new regulations tightened the eligibility requirements for foreclosure relief (whether under the assignment program or under TMAP) and lowered the quality of available relief. HUD does not challenge the district court's findings with regard to the effect of the proposed regulations on rights secured by the 1979 agreement. Rather, HUD attacks the legal basis for the district court's ruling that the Amended Stipulation governs TMAP and contends that in any event a change in the law underlying the 1979 agreement requires modification of the decree.

After defendants' motion to modify was denied, the plaintiffs applied for an award of attorneys' fees under the Equal Access

---

**5.** In *System Federation* the Supreme Court held that the district court should have modified a consent decree forbidding a union shop after Congress made union shops legal.

**6.** HUD has abandoned on appeal its attempt to modify the provisions of the Amended Stipula-

tion governing the assignment program itself. However, at oral argument HUD's attorney acknowledged that the proposed TMAP regulations themselves make it more difficult for a class member to be granted a mortgage assignment.

to Justice Act, 28 U.S.C. § 2412(d). The plaintiffs are entitled to fees "unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). (This subsection (d) has been repealed effective October 1, 1984. *See* Pub.L. No. 96–481, § 204(c), 94 Stat. 2327 (1980).) While the parties disagreed on the meaning of "substantially justified," the district court found that under either party's proffered interpretation, "the government clearly was not substantially justified in seeking to exempt TMAP from the Amended Stipulation." HUD challenges this finding on appeal and refers us to the applicable House Report, which formulates the standard for an EAJA award against the government in terms of whether the government "can show that its case had a reasonable basis both in law and in fact." H.R.Rep. No. 1418, 96th Cong.2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4989. HUD argues that the district court erred in finding no substantial justification for HUD's motion to modify.[7]

## II. THE MOTION TO MODIFY THE CONSENT DECREE

■ The construction of a consent decree is a matter of contract interpretation and thus our review is not governed by the clearly erroneous standard. *Instrumentalist Co. v. Marine Corps League*, 694 F.2d 145, 151–52 (7th Cir.1982). However, our decision comes after more than a decade of litigation before Judge Will and therefore, we recognize, as we have before, that "[t]he district court's views on interpretation [of a consent decree] are entitled to deference." *United States v. City of Chicago*, 717 F.2d 378, 382 (7th Cir.1983) (citing *Brown v. Neeb*, 644 F.2d 551, 558 n. 12 (6th Cir.1981)). Our review of the requested modification of a consent decree should be respectful of the Supreme Court's command that the district courts be given "wide discretion" in deciding whether to modify such decrees. *System Federa-*

*tion*, 364 U.S. at 648, 81 S.Ct. at 371. Thus, we will not overturn the decision of the district court unless its action constituted an abuse of discretion. *See Instrumentalist Co. v. Marine Corps League*, 694 F.2d at 151; *De Filippis v. United States*, 567 F.2d 341, 343 (7th Cir.1977). *See also Environmental Defense Fund, Inc. v. Costle*, 636 F.2d 1229, 1240 (D.C.Cir.1980) (modification rests with the discretion of the district court). *Cf. Godinez v. Lane*, 733 F.2d 1250 at 1257–1258 (7th Cir.1984). We must ensure, however, that the decision of the district court does not rest on an incorrect view of the law and that the factual conclusions underlying the decision are not clearly erroneous. *See generally* 11 C. Wright & A. Miller, Federal Practice & Procedure § 2962 at 633–38 (1973).

■ In construing a consent decree, this court has repeatedly recognized that our primary goal must be to discern the intent of the parties as embodied in the agreement. *See Freedman v. Air Line Stewards & Stewardesses Assoc.*, 730 F.2d 509, 515 (7th Cir.1984); *White v. Roughton*, 689 F.2d 118, 119–20 (7th Cir.1982), *cert. denied*, 460 U.S. 1070, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983); *Sportmart, Inc. v. Wolverine World Wide, Inc.*, 601 F.2d 313, 316–17 (7th Cir.1979). *See also United States v. ITT Continental Baking Co.*, 420 U.S. 223, 233–37, 95 S.Ct. 926, 932–35, 43 L.Ed.2d 148 (1975), *United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757–58, 29 L.Ed.2d 256 (1971).

### A.

■ HUD's first argument for reversal of the district court's refusal to modify the consent decree is that the Amended Stipulation does not govern TMAP because the Amended Stipulation does not refer explicitly to TMAP. HUD claims that its implementation of TMAP *as an alternative to the assignment program* is not controlled by the terms of the Amended Stipulation. Thus, the argument goes, HUD is completely free to implement TMAP in any

---

7. The standard for our review of the district court's "no substantial justification" finding is

the "clearly erroneous" test. *Ramos v. Haig,* 716 F.2d 471, 474 (7th Cir.1983).

manner it chooses. We find this argument to be completely without merit because, as HUD concedes, the present TMAP regulations restrict the availability of the assignment program.

In Paragraph 3 of the Amended Stipulation HUD agreed to operate the assignment program according to HUD Handbook 4191.2 for five years, and it agreed that any changes during the five years would not "curtail the basic rights of mortgagors under the program now in existence." Chapter 2 of the Handbook sets forth the eligibility requirements for participation in the assignment program. At oral argument, the defendants conceded that the TMAP regulations "restrict[ ] the availability [of the assignment program] only in the sense that people get TMAP and not the assignment program." Thus, without doubt the TMAP regulations take away, for some class members, a basic right under the Amended Stipulation—the very right to participate in the assignment program. Further, the district court made a finding, which is not challenged on appeal, that the new "regulations will adversely affect the eligibility of a definable class of mortgagors who would be eligible for assistance under the current regulation" 560 F.Supp. at 1368.[8] HUD also concedes, and the district court found, that TMAP relief, under the proposed regulations, would be less advantageous for the mortgagor than assignment program relief.

Thus, class members would be channelled into a lower quality foreclosure relief program (if they remain eligible for any relief at all). These impacts of the new regulations violate the plain language of the agreement and are contrary to the intent of the parties as embodied in the Amended Stipulation. *See United States v. ITT Continental Baking Co.*, 420 U.S. at 233, 95 S.Ct. at 932. In light of HUD's concession, no other conclusion is possible.[9]

It may well be possible, we suppose, for HUD to comply with its agreement in the Amended Stipulation by substituting for the assignment program a TMAP program under which the only significant difference in the two programs is the retention of the mortgage by its private holder.[10] That would be the TMAP program as described by Assistant Secretary Simons. Judge Will, however, determined that the relief available to mortgagors under TMAP, as proposed, falls in many respects significantly short of what is available under the assignment program.[11] HUD has not appealed that finding. Therefore, by attempting to require some members of the plaintiff class to accept TMAP instead of an assignment, HUD has sought to curtail basic rights under the decree.

The government urges us to read the Amended Stipulation as not governing TMAP in order to avoid "difficult constitutional issues." Brief for Appellants at 28. The argument is that it would be constitu-

---

8. The district court found that the new regulations tightened eligibility for foreclosure assistance in two respects. First, the regulation identifying the date of default made it less likely that mortgagors would be viewed as defaulting "due to circumstances beyond their control." 560 F.Supp. at 1366–67. To qualify for assistance under either plan, default must be due to such circumstances. Second, the new regulations expanded the class of owners of multiple rental units who would be automatically excluded from assistance. 560 F.Supp. at 1368–69. As noted, HUD has not challenged these findings on appeal. Thus, these effects on eligibility would appear to establish beyond doubt that the new regulations violate the Amended Stipulation.

9. The government's argument that the plain language of the Amended Stipulation does not gov-

ern TMAP ignores the codification in the Amended Stipulation of the eligibility requirements for assignment relief. As long as TMAP affects the eligibility of applicants for relief, it should be governed, at least in part, by the Amended Stipulation.

10. We do not decide whether a TMAP program developed in accordance with these requirements would be in compliance with the Amended Stipulation. That issue is not now before us.

11. The district court's admirable comparative analysis of TMAP and the assignment program appears in its opinion at 560 F.Supp. 1359–72. The district court found portions of the proposed regulations valid and also refused, once again, to hold the defendants in contempt. Those rulings are not before us.

tionally suspect to allow an executive official to bind his or her successors in office to substantive policy interpretations of a not-as-yet enacted statute. We shall not reach the merits of this argument because it was never presented, directly or indirectly, to the district court. " 'An issue not presented in the court below cannot be raised for the first time on appeal and form a basis for reversal.' " *American Fletcher Mortgage Co. v. Bass*, 688 F.2d 513, 520 (7th Cir.1982) (quoting *Country Fairways, Inc. v. Mottaz*, 539 F.2d 637, 642 (7th Cir. 1976) (per curiam)). *See Phegley v. Greer*, 691 F.2d 306, 309–10 (7th Cir.1982); *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 853 (7th Cir.1981).

At oral argument, HUD attempted to excuse its failure to present this issue to the district court by claiming that the argument depends on novel and recent developments in the case law. However, the very difficulty and novelty of an issue not presented to the district court has been cited by this court as a factor counseling *against* initial consideration on appeal. *Western Transportation Co. v. Webster City Iron & Metal Co.*, 657 F.2d 116, 119 (7th Cir.1981) (district judge may "expose and distill" subtleties of issue to facilitate appellate consideration.) [12] And, tending to belie "novelty" in the case before us, the district court discussed related constitutional issues with the parties at the 1980 Contempt Hearing. See Transcript of Contempt Hearing at 92. In addition, in support of its constitutional argument, HUD relies on "settled principles" established in nineteenth century Supreme Court cases as well as very recent cases of the courts of

appeals. *See* Brief for Appellants at 29–30 n. 22.[13] Hence, it appears that the defendants have waived their argument by not presenting it to the district court. *Cf. Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Sharp v. Ford Motor Credit Co.*, 615 F.2d 423, 424 n. 1 (7th Cir.1980).

Even if the constitutional issue were properly before us, we doubt that it would be so substantial as to require us to ignore the plain language of the consent decree. We do not believe that the new legislation and the consent decree are inconsistent. *See infra* Part II–B. Therefore, any change in the law that has occurred does not create the sort of clear cut conflict between administrations that might create a constitutional problem.

### B.

■ HUD's second argument is that, even if the consent decree governs other forms of foreclosure relief besides the assignment program (including TMAP), the enactment of the statute authorizing TMAP is a change in the law requiring modification of the decree. We, however, agree with the district court's different view of the significance of the 1980 enactments. In our view, Congress's intent quite clearly was for HUD to offer TMAP only in a manner consistent with the operation of the assignment program and not in derogation of the rights protected by the Amended Stipulation.

We recognize the rule that a change in the law often requires modification of a consent decree or, for that matter, any injunction. The classic example of the ap-

**12.** Somewhat analogously, we have generally refused to create a "novelty" exception to the requirement that habeas corpus petitioners present their constitutional claims to the state courts. *United States ex rel. Hudson v. Brierton*, 699 F.2d 917, 921 (7th Cir.1983). However, the Supreme Court has held subsequently that the novelty of a constitutional issue is "cause" for failure to raise it in a state criminal trial prior to a habeas proceeding, at least where at the time of the state trial there was "no reasonable basis in existing law" for raising the novel claim. *Reed v. Ross*, — U.S. —, —, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984). In any

event, the failure to raise the constitutional issue in the district court in this case cannot be excused on novelty grounds. *See infra* note 13 and accompanying text.

**13.** The prior constitutional discussions at the earlier Contempt Hearing coupled with HUD's reliance on century-old cases makes HUD's failure to raise the issue below, in support of its motion to modify, appear to be litigation strategy. Such a strategy should not lead to our consideration of the question here.

plication of this principle is the Supreme Court's decision in *System Federation No. 91 v. Wright, supra.* In *System Federation,* a complaint had been filed alleging that the defendant railroad and certain unions discriminated against non-union employees. At the time of the complaint, the Railway Labor Act prohibited such discrimination and forbade railroads from requiring union membership as a condition for employment. Six years after entry of a consent decree in which the defendants agreed to stop violating the Railway Labor Act, that Act was amended to allow labor contracts to require union shops. The district court denied the motion of the unions to modify the decree but was reversed by the Supreme Court, which held that, "The parties have no power to require of the court continuing enforcement of rights the statute no longer gives." 364 U.S. at 652, 81 S.Ct. at 373.

The cases make it clear that not every change in the relevant law is enough to require the modification of the consent decree. In *United States v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932) the Supreme Court established the guiding principle that changed circumstances entitle a party to avoid a consent decree (or any equity decree) only when continued enforcement of the decree would be a grievous wrong and would thus be inequitable. This requirement is now codified in Fed.R.Civ.P. Rule 60(b)(5), the provision under which the defendants here seek relief. In the change of law context, the Supreme Court has held that 60(b)(5) is satisfied where "a change in the law brings [the terms of the consent decree] in *conflict* with statutory objectives." *System Federation No. 91 v. Wright,* 364 U.S. at

651, 81 S.Ct. at 373 (emphasis added). *See also Environmental Defense Fund v. Costle,* 636 F.2d 1229, 1241 (D.C.Cir.1980). *Cf. Duran v. Elrod,* 713 F.2d 292 (7th Cir. 1983); *Instrumentalist Co. v. Marine Corps League, supra; United States v. City of Chicago, supra; De Filippis v. United States, supra.*

In the present case, the government has fallen far short of demonstrating that its continued operation of the assignment program in accordance with its agreement is inconsistent with its obligations under the new statute. The defendants' main argument is that the statute has conferred on HUD "broad discretion to implement TMAP." Brief for Appellants at 11. HUD acknowledges that it could have implemented TMAP "according to the Amended Stipulation" without violating the new statute. *Id.* at 37. The defendants thus do not meet the well-established standards for a modification of a decree on account of a change in the law—that the change in the law has brought the decree *in conflict* with statutory objectives. *System Federation No. 91 v. Wright,* 364 U.S. at 651, 81 S.Ct. at 373.[14]

The outcome here might be different if we were faced with a fundamentally altered statutory scheme, but comparison of old § 1715*u* and new § 1715*u* leaves us with no doubt that the legal principles underlying the consent decree have not been altered in the manner HUD asserts.[15] Old § 1715*u* granted the Secretary discretion to take an assignment of a mortgage to avoid foreclosure. New 1715*u* grants the Secretary the discretion to use TMAP to avoid foreclosure or to take an assignment, in the event that TMAP is inappropriate. Both statutes are full of discretionary lan-

**14.** HUD seems to be contending that Congress purposely adopted a statute conferring substantial discretion in order to free HUD from whatever shackles attached to its operation of foreclosure relief programs. We do not find this to be the case. The statutory language and the legislative history, *see infra,* all point in the opposite direction and leave us with little doubt that Congress intended that the quality of foreclosure relief be maintained. The only change effected by the new statute was to give HUD discretion to provide equivalent relief in a less expensive form. *See supra* n. 10.

**15.** The district court, throughout this litigation, has relied on several provisions of federal housing law to find HUD's duty to provide high quality foreclosure relief. We focus on § 1715*u* only because its amendment is the only reason advanced for modification. We do not comment on the applicability of other statutes.

guage and must be construed in light of Congress's intent to provide high-quality foreclosure relief. Just as nothing in former § 1715*u* mandates many of the *particulars* of the assignment program as agreed to by the parties, new 1715*u* leaves many of the particulars of the new program to the discretion of the Secretary with the clearly expressed proviso, *see supra* n. 13, that the new program be no less advantageous to mortgagors than the old. The discretion granted in the new statute is not qualitatively different from the discretion granted in the old statute. Thus, there has been no change in the law that would justify implementation of the TMAP program in the less advantageous form proposed by HUD.

We also agree with the district court that the TMAP program, as proposed, is in "derogat[ion] of the intent of Congress." 560 F.Supp. at 1372. We recognize that the new statute gave the Secretary discretion in implementing the TMAP program. However, the intent of Congress was for the quality of relief to remain unaltered.[16] As noted, the discretion conferred under the amended statute was nothing new. At the Contempt Hearing, HUD's counsel and Assistant Secretary Simons both characterized TMAP as a less expensive program that would preserve the benefits provided under the decree. Secretary Moon Landrieu testified before a Congressional Committee that TMAP would be implemented "only to the extent consistent with the Department's obligations in *Ferrell v. [Pierce]*." Hearings Before Subcommittee on Housing and Urban Affairs, Senate Committee on Banking, Housing and Urban Affairs, 96th Cong., 2d Sess. at 14 (1980).

In addition, the House Committee on Banking, Finance and Urban Affairs Report on TMAP clearly indicates that the

Committee intended the only difference between TMAP and existing law to be whether HUD acquired the mortgage. That report repeatedly compares TMAP to the assignment program and notes only the nonacquisition of the mortgage as a difference between the two programs. *See* H.R. Rep. No. 979, 96th Cong.2d Sess. 51–54 (1980) (the "Committee Report.") The Committee Report explicitly provides:

> In designing TMAP the Committee has attempted to conform as closely as possible to the existing requirements of the assignment program. What the Committee has sought to do is to assure that the assistance accorded to homeowners under both programs *will be virtually the same. In essence the two approaches differ only in who actually holds the mortgage*—under assignment it is the Secretary and under TMAP it is the private lender. *The Committee has taken care to assure that the current structure, requirements and approach of the assignment program will not be altered by this legislation.*

Committee Report at 53–54 (emphasis added). The Conference Committee report on TMAP echoed these sentiments:

> It is the intent of the conferees that the TMAP program be developed as a possibly lower cost alternative to the existing assignment program. *The conferees do not intend, however, that primary reliance on TMAP should make assistance under section 230 generally more difficult to obtain since any substantial tightening of criteria for assistance to section 230 could result in an increase in foreclosures. Therefore, the conferees direct that the Secretary implement TMAP in a manner that will assure that assistance under section 230 will not become less accessible to deserving homeowners who are in de-*

---

**16.** The dissent fails to note the representations made by HUD officials to Congress that the new TMAP program would be complementary to the existing program, would not derogate the rights of mortgagors and would be implemented only to an extent consistent with HUD's obligations under the consent decree. *See* Appellee's Sup-

plemental Appendix at 15; Hearings Before Subcommittee on Housing and Urban Affairs, Senate Committee on Banking, Housing and Urban Affairs, 96th Cong.2d Sess. at 14 (1980). We thus remain convinced that Congress did not intend that TMAP make foreclosure assistance less accessible or advantageous.

fault. One way to accomplish this is to assure that the assignment program could remain active as an alternative to TMAP and that the Secretary has the discretion to use the program both as a primary source of assistance to defaulting homeowners, and as a backup for homeowners for whom TMAP would be inappropriate.

H.R.Rep. No. 1420, 96th Cong.2d Sess. 123 (1980), U.S.Code Cong. & Admin.News 1980, pp. 3506, 3668 (emphasis added). The proposed regulations thus violate the explicitly declared Congressional intent not to alter the eligibility requirements for foreclosure relief and not to make the relief itself less advantageous.

We recognize, as did Judge Will, the importance of fiscal considerations in the design of government programs. We also appreciate the at least theoretical merit of TMAP in reducing or deferring the cash burden on the government. We reiterate that we are not deciding whether the institution of TMAP *per se* violates the decree. We only decide that the proposed regulations, which admittedly make assistance more difficult to obtain and less advantageous to mortgagors, violate HUD's promise, and Congress's intent, not to curtail the basic rights of mortgagors.[17]

Therefore, No. 83–2038 is affirmed.

## III. EQUAL ACCESS TO JUSTICE ACT ATTORNEYS' FEES

■ We must also review the district court's award of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). The district court found that the government's position was not "substantially justified," *id.*, and thus awarded fees to the plaintiffs. The burden is on the

17. HUD has requested us to rule on whether TMAP, as proposed, may go into effect after the five year period of the Amended Stipulation expires. This would appear to depend on whether the proposed TMAP regulations provide an "equivalent substitute" for the current program. Amended Stipulation Paragraph 14. We do not propose to address this issue before it has been decided by the district court. We express no view whatever on the merits of the question.

government to establish a substantial justification and this burden is met by a showing that the government's position had a reasonable basis in law and fact. *Ramos v. Haig*, 716 F.2d 471, 473 (7th Cir.1983). The district court's finding of no substantial justification must be upheld unless it is clearly erroneous. *Id.* at 474. A finding is clearly erroneous only if we are left with a definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1945).

■ Several factors lead us to conclude that Judge Will's decision is not clearly erroneous. We are impressed by the care with which the district court considered both the merits of the case and the attorneys' fees questions. Judge Will explicitly declared that he gave HUD's arguments "the benefit of every doubt." Appendix for Appellants at 106. Further, HUD failed to challenge on appeal either the district court's invalidation of the proposed assignment program regulations or the district court's finding that the proposed TMAP regulations are not as advantageous to the mortgagor as the requirements of the Amended Stipulation. These failures to appeal key points lend substantial support to the district court's decision to award fees. In addition, the lack of any persuasive argument that the Amended Stipulation was not violated by the restrictive regulations, coupled with the explicit evidence of Congressional intent that TMAP be as advantageous to the mortgagor as the existing program, strongly buttresses the conclusion that the district court's finding of no substantial justification is not clearly erroneous.

Therefore, No. 83–2677 is affirmed.

We also note that the five year term of the Amended Stipulation expires on August 2, 1984. Thus, this case is largely academic, except that we must reach the merits in order to address the attorneys fees issue. Because Judge Will ordered an award of fees, the case is not moot. *See Ward v. Arkansas State Police*, 653 F.2d 346, 350 (8th Cir.1981).

COFFEY, Circuit Judge, dissenting.

The issue is this case is whether the defendant, the United States Department of Housing and Urban Development ("HUD"), may modify the 1979 "Amended Stipulation" between HUD and the plaintiff class, to provide that "[n]othing in this Amended Stipulation affects or interferes with [HUD's] implementation of the TMAP program," as enacted by Congress in 1980. The district court denied HUD's motion to modify the "Amended Stipulation" and enjoined HUD from implementing its proposed TMAP regulations. *See Ferrell v. Pierce*, 560 F.Supp. 1344 (N.D.Ill.1983). In addition, the district court awarded attorney's fees to the plaintiff class, finding that HUD had no "substantial justification" for modifying the "Amended Stipulation." The majority upholds the district court's decision, reasoning that HUD's proposed TMAP regulations violate "the plain language" of the 1979 "Amended Stipulation" and also the congressional intent in enacting the TMAP program. A thorough review of the record reveals, however, that the majority's holding directly contravenes the intent of Congress to implement the cost-saving TMAP program. The majority improperly engages in social legislation, substituting its views on the procedure that HUD must follow when providing temporary foreclosure avoidance relief, for those of Congress. I dissent.

The plaintiff class, as certified by the district court, consists of persons who purchased homes with FHA insured mortgages and "are currently or will in the future be in default on [such] mortgages." In 1973, the plaintiff class filed this lawsuit alleging that HUD had failed to promulgate and enforce an effective foreclosure avoidance relief program in accord with 12 U.S.C. § 1715*u* (1976), which provided:

"Upon receiving notice of the default of any mortgage covering a one-, two-, three-, or four-family residence heretofore or hereafter insured under this chapter, the Secretary, in his discretion and for the purpose of avoiding foreclosure of the mortgage ... may acquire the loan and security therefor upon payment of the insurance benefits in an amount equal to the unpaid principal balance of the loan plus any unpaid mortgage interest plus reimbursement for such costs and attorney's fees as the Secretary finds were properly incurred in connection with the defaulted mortgage and its assignment to the Secretary."

In response to the plaintiffs' allegations, HUD revised its Handbook for the Administration of the Home Mortgage Assignment Programs, setting forth new procedures for HUD officials to follow when acquiring a mortgage under 12 U.S.C. § 1715*u*. The Handbook basically provided that if a mortgagor in default satisfied certain eligibility requirements, HUD would accept an assignment of the mortgage, pay the mortgage in full at that time, and negotiate a relief plan with the mortgagor. In August 1979, the plaintiff class and HUD entered into an "Amended Stipulation," approved by the district court as a consent decree in November 1979, providing in pertinent part: [1]

"3. HUD Handbook 4191.2, attached hereto as Appendix A, shall constitute binding instructions for implementation of the assignment program subsequent to entry of this order.... The provisions of the Handbook may be modified in accordance with the Department's usual procedures. However, during the term of this Amended Stipulation the Department will not make any modification which would curtail the basic rights of mortgagors under the program now in existence. The Department will give notice to plaintiffs' counsel prior to final action on any modification."

In September 1980, Congress amended the foreclosure avoidance relief program of 12 U.S.C. § 1715*u*, to include the TMAP

---

**1.** In July 1976 the plaintiffs and HUD entered into a Stipulation, approved by the district court in August 1976, whereby HUD agreed to operate an assignment program as authorized by 12 U.S.C. § 1715*u*. In August 1979, the parties entered into the "Amended Stipulation," which was approved by the district court in November 1979.

program. *See* Housing and Community Development Act, Pub.L. No. 96–399, § 341, 94 Stat. 1614 (1980) (The TMAP program was included in H.R. 7262 and codified in Pub.L. No. 96–399, with minor changes. *See* H.R.Conf.Rep. No. 96–1420, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Ad.News 3617, 3668.). The clear intent of Congress in enacting the TMAP program was to implement a cost-saving alternative to the mortgage assignment program. The TMAP program, as designed by Congress, allows HUD to "make all or part of the monthly payments due under the mortgage" and thereby provide temporary foreclosure avoidance relief without acquiring the entire mortgage. According to the House Committee on Banking, Finance and Urban Affairs:

"Under existing law, the Secretary has the authority to assist homeowners who are in default on their insured mortgages to cure the default and thereby to avoid foreclosure. However, before the Secretary can provide assistance (which is typically in the form of forebearance on a portion of the mortgage payments), the Secretary must first acquire the mortgage from the lender. The acquisition of the mortgage involves a large outlay on the part of the Federal Government. In fiscal year 1981 it is estimated that as much as $55 million will be spent to acquire these mortgages. The Committee believes that, in many instances, the acquisition of the mortgage could be avoided if the Department had the authority to make payments to the mortgagee in an amount sufficient to cure the default and once the default was cured to have the homeowner repay the amounts advanced by the Department. This, in essence, is the theory of the new Temporary Mortgage Assistance Program (TMAP) being authorized in this ball [sic]."

H.R.Rep. No. 96–979, 96th Cong., 2d Sess. at 51–52 (1980). The ranking minority member of the House Committee on Banking, Finance, and Urban Affairs, and cosponsor of the TMAP legislation, Rep. Stanton (R.-Ohio), further stated that

"[u]nder TMAP, the Secretary would be authorized, as an alternative to acquisition under the existing assignment program, to make monthly mortgage payments directly to the mortgagee on behalf of owners of FHA-insured, single family dwellings whose monthly mortgage payments are in default." 126 Cong.Rec. 21,797 (1980).

The hearings before the Senate Subcommittee on Housing and Urban Affairs reveal that Congress had full knowledge of the "Amended Stipulation" between HUD and the plaintiff class when it enacted the TMAP program. *See Housing and Community Development Act: Hearings on S. 2383 Before the Subcomm. on Housing and Urban Affairs of the Senate Comm. on Banking, Housing, and Urban Affairs*, 96th Cong., 2d Sess. 673, 674–77 (1980). Nonetheless, Congress made no mention of the "Amended Stipulation" in the TMAP legislation or the committee reports. The House Committee on Banking, Finance, and Urban Affairs simply stated that:

"In designing TMAP the Committee has attempted to conform as closely as possible to the existing requirements of the assignment program. What the Committee has sought to do is to assure that the assistance accorded to homeowners under both programs will be virtually the same. In essence the two approaches differ only in who actually holds the mortgage—under asignment [sic] it is the Secretary and under TMAP it is the private lender. The Committee has taken care to assure that the current structure, requirements and approach of the assignment program will not be altered by this legislation."

H.R.Rep. No. 96–979, 96th Cong., 2d Sess. at 53–54 (1980). The conference committee merely added that:

"It is the intent of the conferees that the TMAP Program be developed as a possibly lower cost alternative to the existing assignment program.... [T]he conferees direct that the [HUD] Secretary implement TMAP in a manner that will assure that assistance under Section 230 [the foreclosure avoidance relief pro-

vision] will not become less accessible to deserving homeowners who are in default."

H.R.Conf.Rep. No. 96–1420, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Ad.News 3617, 3668.

Pursuant to Congress' directive in 12 U.S.C. § 1715*u* to prescribe regulations for the foreclosure avoidance relief program, HUD proposed regulations implementing the TMAP program, *see* 47 Fed.Reg. 14,-495–500 (1982), received public comments, and published final regulations governing the TMAP program, *see* 47 Fed.Reg. 33,-252–58 (1982). Before codifying these final regulations, HUD notified the district court of the change in law and submitted a motion to modify the "Amended Stipulation," clarifying that:

"Nothing in this Amended Stipulation affects or interferes in any way with the Department's implementation of the TMAP Program as authorized by Public Law 96–399."

Following an evidentiary hearing, the district court ruled that HUD's "motion to modify the Amended Stipulation is ... denied and [HUD is] enjoined from implementing the proposed regulations published at 47 Fed.Reg. 33,252 (1982)." *Ferrell v. Pierce,* 560 F.Supp. at 1372. According to the district court, "what HUD sought ... by this attempt to modify its agreement with the plaintiff class and its commitment to the Court so as to exempt the TMAP regulations from the requirements of the Amended Stipulation, is to scuttle that agreement and the commitment embodied in the Amended Stipulation...." *Id.* The district court concluded that the implementation of HUD's TMAP regulations would "derogate the intent of Congress and the rights of mortgagors under the Amended Stipulation." *Id.* The majority affirms the district court's flawed reasoning and in so doing directly contravenes the intent of Congress to implement the cost-saving TMAP program.

It is well-settled that the decision to grant or deny a motion to modify a court approved stipulation (consent decree) lies within the discretion of the district court. *System Federation v. Wright,* 364 U.S. 642, 646–47, 81 S.Ct. 368, 370–71, 5 L.Ed.2d 349 (1961); *Instrumentalist Co. v. Marine Corps League,* 694 F.2d 145, 151 (7th Cir. 1982); *Environmental Defense Fund, Inc. v. Costle,* 636 F.2d 1229, 1240 (D.C.Cir. 1980). It is equally clear that "sound judicial discretion may call for modification of the terms of [a] ... decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." *System Federation v. Wright,* 364 U.S. at 647, 81 S.Ct. at 371. In the instant case, the record reveals that HUD and the plaintiff class entered into their "Amended Stipulation" in August 1979. Some thirteen months later, in September 1980, Congress amended the foreclosure avoidance relief program, 12 U.S.C. § 1715*u*, to include the cost-saving TMAP program. In compliance with Congress' directive in 12 U.S.C. § 1715*u* to promulgate regulations implementing the TMAP program, HUD compiled proposed regulations, received public comment, and, in August 1982, published final regulations. Before codifying these regulations, HUD sought to modify the 1979 "Amended Stipulation" in order to clarify that HUD's agreement with the plaintiff class did not affect or interfere with implementation of the subsequently enacted TMAP program. The 1979 "Amended Stipulation" clearly contained no reference to the TMAP program. Moreover, Congress had full knowledge of the "Amended Stipulation" entered into between HUD and the plaintiff class, but made no mention of the parties' agreement in the TMAP legislation or the committee reports. Despite this evidence, the district court denied HUD's motion to modify, ruling that implementation of the regulations would "derogate the intent of Congress and the rights of mortgagors under the Amended Stipulation." *Ferrell v. Pierce,* 560 F.Supp. at 1372.

The facts in this case establish that as a result of the subsequently enacted TMAP program, *new circumstances have arisen* to warrant modification of the 1979 "Amended Stipulation." Under the cost-

saving TMAP program, HUD is authorized to provide mortgagors in default with temporary foreclosure avoidance relief without acquiring the entire mortgage. Congress intended that the TMAP program be offered as an alternative to the assignment program already existing under 12 U.S.C. § 1715*u* and the HUD Handbook. *See* H.R.Conf.Rep. No. 96–1420, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Ad.News 3668; 126 Cong.Rec. 21,797 (1980). Furthermore, Congress mandated that HUD promulgate regulations implementing the separate, cost-saving TMAP program. *See* 12 U.S.C. § 1715*u*. The pivotal issue is whether Congress intended that HUD implement the separate, cost-saving TMAP program in accord with the "Amended Stipulation" and the HUD Handbook governing the mortgage assignment program.

The majority asserts that the TMAP regulations promulgated by HUD derogate congressional intent and thus HUD's motion to modify the "Amended Stipulation" must be denied. According to the majority, "Congress's intent quite clearly was for HUD to offer TMAP only in a manner consistent with the operation of the assignment program and not in derogation of the rights protected by the Amended Stipulation." Contrary to the majority's position, Congress never expressly stated or intended that the regulations implementing the separate, cost-saving TMAP program be in accord with the "Amended Stipulation." The *only* evidence of congressional intent concerning the TMAP regulations is found in the conference committee report, where Congress instructs HUD to "implement TMAP in a manner that will assure that assistance under section 230 *will not become less accessible to deserving homeowners who are in default.*" H.R.Conf. Rep. No. 96–1420, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Ad. News 3617, 3668 (emphasis added). Certainly it is logical that if Congress intended for the TMAP regulations to be implemented in accord with the "Amended Stipulation," Congress would have so stated in the TMAP legislation or the committee reports.

Instead, Congress, with full knowledge of the "Amended Stipulation," simply intended that HUD implement the TMAP program to assure that foreclosure avoidance relief would not become less accessible to deserving homeowners in default. Congress granted HUD broad discretionary authority to establish eligibility requirements and to define the term "deserving homeowners." Accordingly, I defer to HUD's expertise in interpreting the newly enacted TMAP program and in promulgating regulations to implement the cost-saving program. *See, e.g., FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 31–32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981); *Andrus v. Shell Oil Co.,* 446 U.S. 657, 667–68, 100 S.Ct. 1932, 1938–39, 64 L.Ed.2d 593 (1980); *Miller v. Youakim,* 440 U.S. 125, 144, 99 S.Ct. 957, 968, 59 L.Ed.2d 194 (1979); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Illinois Cent. Gulf R. Co. v. I.C.C.,* 702 F.2d 111, 114 (7th Cir.1983); *St. Mary of Nazareth v. Dept. of Health & Human Services,* 698 F.2d 1337, 1346–47 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983); *Production Tool v. Employment & Training Admin.,* 688 F.2d 1161, 1167 (7th Cir.1982); *Foulkes v. C.I.R.,* 638 F.2d 1105, 1110 n. 17 (7th Cir. 1981); *McElrath v. Califano,* 615 F.2d 434, 439 (7th Cir.1980).

In footnote 16, the majority targets testimony by HUD officials to support its belief that Congress did not intend to "make foreclosure assistance less accessible or advantageous." Contrary to the majority's position, I note that Congress fully expected differences to exist between the mortgage assignment program and the TMAP program, as implemented by HUD. According to Rep. Lundine (D.–N.Y.), a member of the House Committee on Banking, Finance, and Urban Affairs, and a co-sponsor of an amendment to the TMAP legislation, the TMAP program:

"provide[s] HUD with the authority to impose less restrictive interest rates and provide[s] a means by which a homeowner receiving assistance can be shifted

into the assignment program if the higher debt burden under the TMAP is likely to cause a new default.

\*　　\*　　\*　　\*　　\*　　\*

*If the TMAP program is used, as intended, to replace the current assignment program, I think we will see an increasing number of foreclosures among low-income homeowners."*

126 Cong.Rec. 21,803 (1980) (emphasis added). Even assuming that foreclosure avoidance relief is less accessible under the district court's interpretation of the TMAP regulations, members of Congress, such as Rep. Lundine, certainly realized that the discretion *given to the Secretary of HUD* in implementing the cost-saving TMAP program could have such an effect. Moreover, I note that the 1983 Congress, despite the district court's order preventing HUD from implementing the cost-saving TMAP program, approved the TMAP regulations as representing the intent of Congress. Although "the view of a later Congress does not establish definitively the meaning of an earlier enactment, . . . it does have persuasive value." *Bell v. New Jersey and Pennsylvania,* 461 U.S. 773, 103 S.Ct. 2187, 2194, 76 L.Ed.2d 313 (1983) (citing *Bowsher v. Merck,* 460 U.S. 824, 103 S.Ct. 1587, 1595 n. 12, 75 L.Ed.2d 580 (1983)). *See also Atchison T. & S. F. Ry. Co. v. Blanchette,* 628 F.2d 1011, 1014 (7th Cir. 1980). According to the House Committee on Appropriations:

"The committee has learned that implementation of the TMAP program has been blocked by the District Court of Chicago on the basis that the regulations are inconsistent with the authorizing legislation. *The Department's regulations of last August implementing the TMAP program are in substantial agreement with all relevant Federal housing laws and represent the intent of Congress."*

H.R.Rep. No. 98–223, 98th Cong., 1st Sess. 1, 11 (1983) (emphasis added).

The persuasive language of the 98th Congress solidifies my position that HUD promulgated TMAP regulations in full accord with congressional intent. The legislative history reveals that Congress enacted the TMAP program as a separate, cost-saving alternative to the mortgage assignment program. HUD has acted prudently and wisely to implement this cost-saving program in an expeditious manner. Sound judicial discretion dictates that in light of the subsequently enacted TMAP program and the HUD regulations promulgated to implement the cost-saving program, *new circumstances have arisen* requiring the "Amended Stipulation" to be modified. Instead, the majority denies the motion to modify and enjoins HUD from implementing the cost-saving TMAP program, thereby negating the very intent of Congress. The majority's apparent predisposition to rewrite our nation's housing laws, *see, e.g., Hope v. County of Du Page,* 738 F.2d 797 at 825 (7th Cir.1984) (Cudahy, J., dissenting) ("without coming to grips with housing, it is difficult to come to grips with anything else"), is an unprecedented infringement upon the legislative process. I dissent from the majority's unwarranted attempt to engage in social legislation, usurping HUD's authority to promulgate TMAP regulations and thereby imposing the majority's will for that of Congress.[2] Moreover, I find absolutely no basis for the award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), in this case. In my view, HUD was not only "substantially justified" in seeking a modification of the consent decree, it was furthering the intent of Congress to implement the cost-saving TMAP program.

---

2. The majority opinion prevents HUD from implementing the proposed TMAP regulations only for the period of the "Amended Stipulation." Majority opinion at n. 17. Note that the

"Amended Stipulation" expires August 2, 1984, and thereafter the parties are not bound by the majority opinion.