ALLIEDSIGNAL, INC., Crane Co., Eldec Corp., and Hydro–Aire, Inc., Plaintiffs–Appellees,

v.

B.F. GOODRICH CO., Coltec Industries, Inc., and Menasco Aerospace, Ltd., Defendants–Appellants.

No. 99–2098.

United States Court of Appeals, Seventh Circuit.

Argued June 11, 1999.

Decided June 23, 1999.*

---

* The opinion was originally issued in typescript.

Thomas D. Yannucci, Kirkland & Ellis, Washington, DC, Joseph Fullenkamp, Barnes & Thornburg, South Bend, IN, for Plaintiff–Appellee AlliedSignal, Inc.

Michael T. Hannafan, Hannafan & Associates, Chicago, IL, Thomas H. Singer, South Bend, IN, Garret G. Rasmussen, Patton & Boggs, Washington, Dc, for Plaintiffs–Appellees Crane Co., Eldec Corp., Hydro–Aire, Inc.

Robert J. Palmer, May, Oberfell & Lorber, South Bend, IN, Thomas F. Cullen, Jr., Jones, Day, Reavis & Pogue, Washington, DC, Robert J. Konopa, Konopa & Murphy, South Bend, IN, for Defendant–Appellant B.F. Goodrich Co.

Robert D. Joffe, Rory O. Millson, Cravath, Swaine & Moore, New York, NY, Robert J. Konopa, Konopa & Murphy, South Bend, IN, for Defendant–Appellant Coltec Industries, Inc.

Robert D. Joffe, Rory O. Millson, Cravath, Swaine & Moore, New York, NY, for Defendant–Appellant Menasco Aerospace, Ltd.

Jeffrey A. Modisett, Office of the Attorney General, Indianapolis, IN, for Amicus Curiae State of Indiana.

Richard Blumenthal, Office of the Attorney General, Hartford, CT, for Amicus Curiae State of Connecticut.

Thomas J. Miller, Iowa Attorney General's Office, Des Moines, IA, for Amicus Curiae State of Iowa.

Before BAUER, FLAUM and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiffs AlliedSignal, Crane Co., Eldec Corp. and Hydro–Aire, Inc. filed suit in federal district court alleging that the proposed merger between defendants B.F. Goodrich, Coltec Industries, and Menasco Aerospace, Ltd. violated Section 7 of the Clayton Act, 15 U.S.C. § 18. AlliedSignal separately alleged that the proposed merger would violate a joint agreement between it and Coltec. The district court granted a preliminary injunction for a stay of the merger pending arbitration of the contract claim and pending a bench trial on the antitrust claim scheduled for July 12, 1999. B.F. Goodrich, Coltec, and Menasco took an interlocutory appeal which we have considered on an expedited basis. We now affirm.

## Background

An aircraft landing system is composed of three component parts: the landing gear, the wheels and brakes (sold together as a package), and the brake control system. The industry is currently dominated by a few large firms. AlliedSignal manufactures wheels and brakes. B.F. Goodrich manufactures landing gear and wheels and brakes. Coltec manufactures landing gear through its subsidiary Menasco Aerospace, Ltd. The only other major player in this industry is a French company which manufactures landing gear under the name Messier–Dowty, and wheels and brakes under the name Messier–Bugatti.

AlliedSignal and Coltec currently operate under a Strategic Alliance Agreement ("SAA") which provides for cooperation between AlliedSignal and Coltec in the prep-

aration of joint bids on landing systems. Their principal competitor in these bids is B.F. Goodrich, which generally pairs its wheels and brakes with its own landing gear. The proposed merger between B.F. Goodrich and Coltec would bring Coltec's aircraft landing gear division under the control of B.F. Goodrich and result in a single large domestic manufacturer of aircraft landing gear. If the merger were to proceed, B.F. Goodrich–Coltec would control approximately 64% of the worldwide market for landing gear for wide-body jets, 44% of the worldwide market for landing gear for narrow-body jets, and 59% of the worldwide market for landing gear for U.S. military jets.

AlliedSignal alleges several harms resulting from the proposed merger. First, in preparing joint bids and the integrated landing systems which result, AlliedSignal and Coltec have shared confidential proprietary information. AlliedSignal is concerned that B.F. Goodrich would have access to this information once Coltec is under B.F. Goodrich's control. In its capacity as a landing gear purchaser, Allied-Signal alleges that B.F. Goodrich could use its market power to charge it uncompetitive prices for landing gear. Last, Allied-Signal fears that B.F. Goodrich could leverage its dominant post-merger position in domestic landing gear production to favor B.F. Goodrich's own wheels and brakes over those of AlliedSignal in the formation of integrated landing systems.

Crane Co., Eldec Corp. and Hydro–Aire, Inc. ("the Crane Plaintiffs") are sellers of component parts for landing gear systems to both Coltec and B.F. Goodrich. They join AlliedSignal's Clayton Act claim out of a concern that the merger will allow B.F. Goodrich monopoly buying power (monopsony) for their goods.

Neither the Federal Trade Commission nor the Department of Defense (which reviewed the merger because of the parties' status as defense contractors) has objected to the merger. As noted above, the district judge granted a preliminary injunc-tion for a stay of the merger pending arbitration of the contract claim and pending a bench trial on the antitrust claim scheduled for July 12, 1999.

## Discussion

### I. Arbitration Issues

B.F. Goodrich first raises a set of arguments predicated on the arbitration clause in the AlliedSignal–Coltec SAA. It asserts that the antitrust claim should be arbitrated with the contract claim and that the preliminary injunction should therefore last only as long as it takes to convene an arbitral panel. Assuming that the antitrust claim is not subject to arbitration, B.F. Goodrich argues that the district court improperly failed to stay consideration of the antitrust claim pending the results of the AlliedSignal–Coltec contract arbitration. Before we may consider the merits of B.F. Goodrich's argument, however, we must first consider two related jurisdictional obstacles to these aspects of the appeal.

### A. Jurisdiction

Fed. R.App. P. 3(c)(1)(B) requires that the notice of appeal "designate the judgment, order or part thereof appealed from." The requirements of Rule 3(c) are jurisdictional and "their satisfaction is a prerequisite to appellate review." *Smith v. Barry*, 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992); *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). Nevertheless, "mere technicalities" should not stand in the way of our consideration of the merits, and we will find a notice of appeal sufficient so long as it "is the functional equivalent of what the rule requires." *See Torres*, 487 U.S. at 316–17, 108 S.Ct. 2405. The rule in this Circuit is that "an error designating the judgment or a part thereof will not result in a loss of appeal if the intent to appeal from the judgment complained of may be inferred from the notice and if the appellee

has not been misled by the defect." *Cardoza v. Commodity Futures Trading Comm'n,* 768 F.2d 1542, 1546 (7th Cir. 1985); *see also Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1125 (7th Cir.1996), *Badger Pharmacal, Inc. v. Colgate–Palmolive Co.,* 1 F.3d 621, 625 (7th Cir.1993); *but see Garcia v. City of Chicago,* 24 F.3d 966, 969 n. 4 (7th Cir.1994); *Brandt v. Schal Assocs., Inc.,* 854 F.2d 948, 954 (7th Cir.1988).

B.F. Goodrich's notice of appeal gave notice only of an appeal "from an order entered on April 30, 1999 granting Allied-Signal's motion for preliminary injunction." In an attached docketing statement, B.F. Goodrich alleged jurisdiction over this appeal solely under 28 U.S.C. § 1292(a)(1). Section 1292(a)(1) makes the district court's issuance of a preliminary injunction an immediately appealable interlocutory order, but does not confer jurisdiction over the district court's refusal to refer the antitrust claim to arbitration or its alleged denial of a stay pending arbitration. (Jurisdiction over these latter two claims is conferred by 9 U.S.C. § 16(a)(1)(C) and § 16(a)(1)(A), respectively.) AlliedSignal therefore contends that B.F. Goodrich failed to adequately indicate its intent to appeal the district court's arbitration rulings.

■ Before we may consider this question, we must consider another one: whether the district court actually made any rulings regarding arbitration. The record reveals that the parties to the litigation did fully brief the arbitration issues raised by B.F. Goodrich on appeal, though the written order issued by the district judge discussed only the propriety of a preliminary injunction on the antitrust claim. B.F. Goodrich argues that this order, granting a preliminary injunction pending a trial on the merits of the antitrust claim, necessarily encompasses a refusal to refer the antitrust claim to arbitration. We agree. However, an order granting a preliminary injunction and setting a trial date does not necessarily constitute a refusal to stay the antitrust claim pending a resolution of the contract arbitration. Setting a July 12th trial date does not in and of itself indicate that the district judge will refuse to stay the trial if the contract arbitration is not completed by that date. Since we cannot conclude that the district court actually denied B.F. Goodrich a stay of the antitrust proceedings, no appellate jurisdiction lies over this issue.

■ Consideration of this second jurisdictional question leads us back to our original one, whether B.F. Goodrich gave adequate notice of its intent to appeal the refusal to refer the antitrust claim to arbitration. Since we agree with B.F. Goodrich that the order granting the preliminary injunction necessarily encompassed a denial of a referral to arbitration, we believe that B.F. Goodrich's identification of the "order entered on April 30, 1999 granting AlliedSignal's motion for preliminary injunction" sufficiently noticed its intent to appeal the denial of the referral to arbitration. We therefore have jurisdiction over the district court's refusal to refer the antitrust issue to arbitration.

## B. Arbitrability of Antitrust Claim

In the SAA, AllliedSignal and Coltec agreed to cooperate in the production of integrated landing systems through joint projects involving AlliedSignal's brakes and wheels and Coltec's landing gear. B.F. Goodrich claims that the antitrust claims fall within the arbitration clause of the SAA, which provides for arbitration of "any claim or controversy arising out of or relating to [the] Agreement," because any future anticompetitive effects produced by the merger would occur only if B.F. Goodrich–Coltec fails to abide by the terms of the SAA.

■ A district court must refer a dispute to an arbitrator "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Matthews v. Rollins Hudig Hall*

*Co.*, 72 F.3d 50, 53 (7th Cir.1995). We resolve "any doubts concerning the scope of arbitrable issues ... in favor of arbitration." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In this case, however, it is clear that Allied-Signal's and the Crane Plaintiffs' antitrust claims do not arise under the SAA.

 The Crane Plaintiffs' antitrust claim is not subject to arbitration because the Crane Plaintiffs are not parties to the SAA and therefore cannot be bound by its arbitration clause. *See, e.g., IDS Life Insurance Co. v. SunAmerica Inc.*, 103 F.3d 524, 528 (7th Cir.1996). With regard to AlliedSignal, B.F. Goodrich argues that AlliedSignal's antitrust claim arises under the SAA because AlliedSignal would suffer antitrust injury only if B.F. Goodrich–Coltec fails to abide by the terms of the SAA. B.F. Goodrich provides no legal support for its argument that a Section 7 claim that has its "origin or genesis" in a contract containing an arbitration clause must also be arbitrated. This absence of legal authority need not trouble us, however, because the factual predicate underlying B.F. Goodrich's claim is without basis.

As explored more fully below, AlliedSignal claims antitrust injury in part from an increase in the price of landing gear it purchases as a landing systems integrator. The SAA, though it does provide for shared information and cooperation, does not regulate the price Coltec may charge for its landing gear. Therefore, B.F. Goodrich–Coltec could fully comply with the SAA and still cause AlliedSignal antitrust injury by charging uncompetitive prices. AlliedSignal's antitrust claims do not arise under the SAA and hence are not subject to arbitration.[1]

## II. Propriety of Preliminary Injunction

We turn now to the other aspect of B.F. Goodrich's appeal, a challenge to the district court's issuance of the preliminary injunction pending arbitration of the contract claims and pending a bench trial on the antitrust claim. B.F. Goodrich argues that neither of these two claims has a sufficient likelihood of success to warrant the issuance of a preliminary injunction. We first examine the antitrust claim and conclude that the district court's preliminary injunction was proper. This determination provides a sufficient basis to sustain the preliminary injunction and therefore moots any consideration of the contract claim.[2]

 " 'The purpose of a preliminary injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit.' " *Kellas v. Lane*, 923 F.2d 492, 493 (7th Cir.1990) (quoting *Faheem-El v. Klincar*, 841 F.2d 712, 716 (7th Cir. 1988) (en banc)). To prevail on a motion for preliminary injunction, the moving party must meet the threshold burden of establishing (1) some likelihood of prevailing on the merits; and (2) that in the absence of the injunction, he will suffer irreparable harm for which there is no adequate remedy at law. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1453 (7th Cir.1995). If the moving party clears both of these prerequisites, a district court engages in a "sliding scale" analysis by balancing the harms to the parties and the public interest. *Roth*, 57 F.3d at 1453; *Storck U.S.A., L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir.1994). Because preliminary injunc-

---

1. This conclusion moots B.F. Goodrich's contention that the preliminary injunction on the contract claim should last only as long as it takes to convene an arbitral panel. The need to preserve the status quo prior to a trial on the merits of the antitrust claim provides a sufficient basis for the duration of the preliminary injunction.

2. In supplemental filings, the parties have made us aware of the ongoing arbitration of the contract claim. Since we rely solely on the antitrust claim to sustain the preliminary injunction, we have no need to consider what effect these ongoing proceedings might have on our view of the likelihood of success on the merits of the contract claim.

tions are "by [their] very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by [their] for-the-time-beingness," *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1435 (7th Cir. 1986) (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 739, 742 (2d Cir.1953)), we review the district court's decision to issue a preliminary injunction for an abuse of discretion. *Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 508 (7th Cir.1994).

To show some likelihood of success on the merits of its Section 7 claim, AlliedSignal had to demonstrate (1) that the effect of the merger had some likelihood of substantially lessening competition or tending to create a monopoly, 15 U.S.C. § 18; and (2) that AlliedSignal had some likelihood of being within the class of plaintiffs with standing to assert the likely antitrust injuries. *See, e.g., Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). The district court found that AlliedSignal had made the requisite showing of likely anticompetitive effects and found two possible bases for AlliedSignal's antitrust standing. After concluding that AlliedSignal would suffer irreparable injury in the absence of a preliminary injunction and then balancing the relative harms to the respective parties along with the public interest, the district court concluded that a preliminary injunction was warranted. As noted above, we review the district court's decision for an abuse of discretion.

## A. Market Concentration

 Section 7 of the Clayton Act prohibits mergers the effect of which "may be to substantially lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. AlliedSignal defines three product markets in which the B.F. Goodrich–Coltec merger may lessen competition: (1) the worldwide market for wide body landing gear; (2) the worldwide market for narrow body landing gear; and (3) the worldwide market for military landing gear. AlliedSignal observes that the merger would reduce the worldwide number of firms that design and manufacture landing gear for each of these three markets from three to two and that after the merger, B.F. Goodrich–Coltec would control approximately 64% of the worldwide market for landing gear for wide-body jets, 44% of the worldwide market for narrow-body jets, and 59% of the worldwide market for landing gear for U.S. military jets. The merger would therefore result in large increases in the Herfindahl–Hirschman Index (HHI) for these markets: from 3230 to 5272 in the market for landing gear for wide-body jets, from 4496 to 4947 in the market for landing gear for narrow-body jets, and from 3157 to 4372 in the market for landing gear for U.S. military jets.[3] Based on this evidence, the district court found that AlliedSignal had made a sufficient showing of a likely Section 7 violation to warrant a preliminary injunction.

B.F. Goodrich raises two objections to the district court's finding that the merger would likely have anticompetitive effects. First, B.F. Goodrich argues that although B.F. Goodrich–Coltec might possess market power in landing gear, the airplane manufacturers will continue to possess overwhelming buying power and will be able to squelch any monopoly rents B.F. Goodrich attempts to extract. Second, B.F. Goodrich relies on the failure of either the FTC or the Department of Defense to object to the merger as evidence

---

**3.** The HHI estimates market concentration by summing the squares of the market shares of every firm in the market. Areeda, Hovenkamp, & Solow, *Antitrust Law*, ¶ 930(a) (rev. ed.1998). Federal antitrust regulators define as "highly concentrated" any market in which the HHI exceed 1800, and presume that mergers in that range "producing an increase in the HHI of more than 100 points are likely to create market power or facilitate its exercise." U.S. Dep't of Justice & Federal Trade Comm'n, *1992 Horizontal Merger Guidelines* § 1.51(c) (rev.1997).

that post-merger competition in the landing gear market will remain robust.

Neither of these objections convinces us that the district court abused its discretion in concluding that AlliedSignal had shown a sufficient likelihood of a Section 7 violation. The buying power of the large airplane manufacturers might in fact be sufficient to prevent B.F. Goodrich–Coltec from charging uncompetitive prices. However, if airplane manufacturers have market power relative to the purchasers of the fully-assembled airplanes, the airplane manufacturers would simply pass along the increased landing gear costs and hence would have no incentive to prevent B.F. Goodrich–Coltec from charging uncompetitive prices. AlliedSignal presents evidence that airplane manufacturers do possess such market power and that a number of airlines object to the merger, which suggests that AlliedSignal's prediction of the likely market effects of the merger is worthy of some credence. The district court did not abuse its discretion in concluding that this factual dispute could not be resolved at the preliminary injunction stage.

 Similarly, B.F. Goodrich gives us no reason to believe that the failure of either the FTC or the Department of Defense to object to the merger should be regarded as conclusive of its legality. Courts do not generally defer to an agency's decision not to challenge a merger. *See, e.g., Tasty Baking Co. v. Ralston Purina, Inc.*, 653 F.Supp. 1250, 1254 (E.D.Pa. 1987); *Laidlaw Acquisition Corp. v. Mayflower Group, Inc.*, 636 F.Supp. 1513, 1521 (S.D.Ind.1986). To the contrary, federal regulators will not necessarily challenge every potentially troublesome merger, which is why Congress made private enforcement "an integral part of the congressional plan for protecting competition," *California v. American Stores Co.*, 495 U.S. 271, 284–85, 110 S.Ct. 1853, 109 L.Ed.2d 240 (1990). The district court did not abuse its discretion in concluding that the failure of the FTC or DOD to object to

the merger does not bar AlliedSignal's private enforcement action.

**B. Antitrust Standing**

 Having concluded that the district court did not abuse its discretion in finding a sufficient likelihood of a Section 7 violation, we turn to AlliedSignal's antitrust standing. Section 4 of the Clayton Act sets forth the group of persons who may maintain private damages actions under the antitrust law. It provides:

> [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides.

15 U.S.C. § 15. Despite this broad language, it is well-settled that "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Associated Gen. Contractors*, 459 U.S. at 534, 103 S.Ct. 897; *see also Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990). The doctrine of antitrust standing therefore limits the class of plaintiffs under § 4 to those who can show "a direct link between the antitrust violation and the antitrust injury." *Greater Rockford Energy & Technology Corp. v. Shell Oil Co.*, 998 F.2d 391, 395 (7th Cir.1993). The Supreme Court has identified several factors to be considered in determining whether a plaintiff is the proper party to bring a private action under the antitrust laws: (1) the causal connection between the antitrust violation and the plaintiff's injury; (2) the nature of the plaintiff's injury and the relationship between the plaintiff's injury and the type of activity sought to be redressed under the antitrust laws; and (3) the speculative nature of the plaintiff's claim for damages and the potential for duplicative recovery or complex apportionment of damages. *Associated Gen. Contractors*, 459 U.S. at 537–46, 103 S.Ct. 897; *see also Serfecz v.*

*Jewel Food Stores,* 67 F.3d 591, 595–96 (7th Cir.1995).

A competitor in the merging industry ordinarily lacks antitrust standing because that competitor would generally only stand to gain from the increase in prices. *See, e.g., Cargill v. Monfort of Colo.,* 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986); *Alberta Gas Chems., Ltd. v. E.I. Du Pont De Nemours & Co.,* 826 F.2d 1235 (3d Cir.1987); Areeda, Hovenkamp, & Solow, Antitrust Law, ¶ 373(b) (rev. ed.1998). B.F. Goodrich argues that AlliedSignal's claim is founded only on its rivalry with B.F. Goodrich for the sale of wheels and brakes and hence lacks antitrust standing. AlliedSignal, however, initially alleges standing not as a competitor for sales of wheels and brakes, but as a purchaser of landing gear.

AlliedSignal presents evidence that in the airplane manufacturing industry, the wheels and brakes manufacturer is responsible for integrating its wheels and brakes together with landing gear and brake control systems to produce a complete landing system. B.F. Goodrich does not argue that AlliedSignal does not act as a purchaser in its capacity as a landing systems integrator. Rather, B.F. Goodrich claims that AlliedSignal has not identified any current aircraft program in which it is an ongoing customer for landing gear. Although the record is unclear as to whether AlliedSignal is currently serving as a landing systems integrator on any ongoing project, AlliedSignal does continue to submit bids (at least one of which has been accepted) to serve as a landing systems integrator. Given the early procedural stage of this case and the necessarily tentative nature of the district court's conclusions, we do not believe that the district judge abused his discretion in concluding that AlliedSignal has some likelihood of showing antitrust standing.[4]

## C. Irreparable Harm

B.F. Goodrich argues that a preliminary injunction should not have issued because it has promised to hold separate the landing gear division of Coltec from B.F. Goodrich's landing gear facility until at least the end of August 1999 and hence any harm to AlliedSignal and the Crane Plaintiffs resulting from the merger would not be irreparable. B.F. Goodrich contends that if a court were to find an antitrust violation, divestiture of the Coltec landing gear division would be the likely remedy. B.F. Goodrich therefore argues that holding the Coltec division separate is sufficient to maintain the status quo pending trial and that a preliminary injunction was therefore unnecessary.

 We believe that the district judge did not abuse his discretion in finding a sufficient likelihood of irreparable harm. On the basis of this record, we cannot definitively determine that the proposed separation between Coltec's landing gear division and the remainder of Coltec would adequately preserve the status quo pending a trial on the merits of the antitrust claim. In addition, if the merger were consummated with the Coltec landing gear division held separate, this might unduly prejudice the scope of a possible remedy should the merger ultimately be found to violate Section 7. The district court did not abuse its discretion in finding a sufficient likelihood of irreparable harm.

## D. Balance of Harms and Public Interest

 B.F. Goodrich last contends that the merger promises substantial efficien-

4. Since we have determined that AlliedSignal has demonstrated a sufficient likelihood of establishing standing as a consumer of landing gear, we do not reach AlliedSignal's alternative ground of antitrust standing based on the injury AlliedSignal would endure if B.F. Goodrich–Coltec were able to use its domi-

nant position in landing gear to leverage its own wheel and brakes division unfairly over that of AlliedSignal. We similarly do not address the Crane Plaintiffs' injury based on B.F. Goodrich–Coltec's alleged monopoly buying power as it has not been made the subject of this appeal.

cies in the global aerospace market which will go unrealized while the injunction stands and hence that the balance of harms weighs against the preliminary injunction. The merger will significantly concentrate the worldwide market for landing gear for wide-body jets, for narrow-body jets, and for U.S. military jets. If the merger were to lead to noncompetitive prices for landing gear, this would be a significant harm to AlliedSignal, the Crane Plaintiffs, and the public. Whether the merger will have these effects is a subject for trial. At this stage, we find no abuse of discretion in the district court's determination that the balance of harms outweighed the potential benefits identified by B.F. Goodrich.

### III. Procedures Adopted by District Court

■ In a catch-all objection, B.F. Goodrich contends · that the manner in which the district judge reached his decision constituted an abuse of discretion. The district judge initially announced that he would allow each side to present argument and one live witness. After hearing argument from both sides, the district judge decided to issue the preliminary injunction without hearing from each side's live witness. B.F. Goodrich contends that the failure to conduct a more extensive evidentiary hearing was an abuse of discretion.

■ Under the circumstances of this case, we conclude that the procedures adopted by the district court were adequate. We note that B.F. Goodrich did not object to the district court's conduct of the hearing at the time. Moreover, B.F. Goodrich fails to indicate what, if anything, a live witness would have added in light of the voluminous exhibits, affidavits, and depositions each side provided. Finally, contrary to B.F. Goodrich's claim, there is no general requirement that a district judge hear live testimony or conduct a hearing at all. The burden is on the party seeking such a hearing to establish that it "has and

intends to introduce evidence that if believed will so weaken the moving party's case as to affect the judge's decision on whether to issue the injunction," *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1171 (7th Cir.1997). B.F. Goodrich did not carry this burden.

### IV. Sealed Appendices

One final issue concerns B.F. Goodrich's and AlliedSignal's motions to file confidential supplemental appendices and substantial portions of the record under seal. B.F. Goodrich has filed the motion in an attempt to comply with the protective order it and AlliedSignal stipulated to in the district court. AlliedSignal indicates in its motion that it believes the protective order overbroad, but nevertheless seeks to have the materials sealed. The information in the appendices and the proposed sealed portions of the record consists of a variety of strategic plans, economic forecasts, party and non-party depositions, and affidavits from expert witnesses.

In light of the expedited nature of this appeal and its inherent time constraints, we grant the motions. On remand, the district court shall conduct, with appropriate dispatch, a review of whether the submitted materials may remain under seal. This examination shall be carried out in accordance with our recent opinion in *Citizens First National Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943 (7th Cir.1999).

### Conclusion

The district court's grant of a preliminary injunction is AFFIRMED. The case is REMANDED for further proceedings consistent with this opinion.