James D. FERRELL, Joyce A. Ferrell, and Johnnie D. Brown, et al., individually and on behalf of all others similarly situated, Plaintiffs–Appellees,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and Andrew Cuomo, Secretary, United States Department of Housing and Urban Development, Defendants–Appellants.

No. 98–2361.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1998.

Decided July 26, 1999.

William P. Wilen (argued), National Center on Poverty Law, Inc., Chicago, IL, for Plaintiffs–Appellees.

Linda A. Wawzenski, Office of the U.S. Atty., Chicago, IL, John C. Hoyle (argued), Dept. of Justice, Civil Division, Appellate Section, Washington, DC, for Defendants–Appellants.

Before POSNER, Chief Judge, and CUDAHY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

When the Balanced Budget Downpayment Act became effective in 1996, the United States Department of Housing and Urban Development ("HUD") terminated a mortgage foreclosure relief program that it had been operating pursuant to a consent decree since 1976. The district court granted a preliminary injunction requiring HUD to reinstate the program or an equivalent substitute until further order from the court. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

## I

## BACKGROUND

### A. Factual and Procedural Background

In 1973, the plaintiff class filed suit against the Secretary of Housing and Urban Development ("the Secretary"). The plaintiffs alleged that HUD was statutorily required by the National Housing Act and other federal housing legislation to provide mortgage foreclosure relief to homeowners with HUD-insured mortgages. *See Ferrell v. Pierce*, 743 F.2d 454, 455–56 (7th Cir.1984). The parties reached a settlement agreement, which was entered as a consent decree with the district court's approval in 1976. *See id.* at 457. The consent decree incorporated a detailed plan for HUD to fulfill its obligation to provide foreclosure avoidance relief through the operation of a mortgage assignment program. *See id.* A mortgage assignment program provides foreclosure relief by allowing HUD to pay off the mortgage debt of a mortgagor in default, take assignment of the mortgage from the mortgagee, and then work out a payment plan or forbearance agreement with the mortgagor. *See id.* at 456.

In 1979, with the court's approval, the parties agreed to an Amended Stipulation, which superseded the consent decree. The Amended Stipulation imposed specific procedural and substantive restraints on HUD's operation of the mortgage assignment program. The Amended Stipulation also provided that, after the five-year period following the entry of the Amended Stipulation, HUD must continue to "provide assistance or relief in the form of the present assignment program or an equivalent substitute to permit mortgagors in default on their mortgages to avoid foreclosure and to retain their homes during periods of temporary financial distress." *Id.* at 458. At the time of the Amended Stipulation, the statutory authority for HUD's operation of the mortgage assignment program was contained in the former Section 230 of the National Housing Act, 12 U.S.C. § 1715u (1968). *See Ferrell v. Pierce*, 560 F.Supp. 1344, 1350 (N.D.Ill. 1983).

Subsequently, Congress enacted the Housing and Community Development Act of 1980, Pub.L. No. 96–399, 94 Stat. 1614, 1659, which amended Section 230 of the National Housing Act to authorize HUD to

provide foreclosure avoidance relief in the form of Temporary Mortgage Assistance Payments ("TMAP") in addition to the mortgage assignment program. *See Ferrell*, 560 F.Supp. at 1350. TMAP differed from the mortgage assignment program in that it allowed HUD to take over temporarily part or all of the mortgagor's payments and to make those payments to the mortgagee directly, rather than paying off the entire mortgage and taking assignment of the mortgage. *See id.* In 1983, HUD promulgated regulations to implement TMAP and sought to modify the 1979 Amended Stipulation to allow HUD to operate TMAP and the mortgage assignment program simultaneously. *See id.* at 1354–55. The district court denied HUD's motion to modify the consent decree, concluding that the new regulations would lower the overall quality of relief available, thus violating the requirement in the Amended Stipulation that HUD continue to provide the mortgage assignment program or an equivalent substitute. *See id.* at 1363–64, 1371–72.[1] This court affirmed. *See Ferrell*, 743 F.2d at 466.

In 1996, Congress enacted the legislation at issue in this appeal—the Balanced Budget Downpayment Act, I, Pub.L. No. 104–99, 110 Stat. 26 (Jan. 26, 1996) ("the Downpayment Act"). Section 407 of the Downpayment Act amended Section 230 of the National Housing Act, 12 U.S.C. § 1715u (1988). The former Section 230, titled "Temporary mortgage assistance payments and acquisition of mortgages to avoid foreclosure," authorized the Secretary to operate TMAP and the mortgage assignment program. The amended Section 230, 12 U.S.C. § 1715u (Supp.1999), titled "Authority to assist mortgagors in default," authorizes the Secretary to operate a partial claim program[2] and to accept assignments of defaulted mortgages when the mortgagee has modified the mortgage to cure the default and to provide for mortgage payments within the mortgagor's reasonable ability to pay. *See id.* § 1715u(b) & (c).

The amended Section 230 also requires mortgagees to engage in certain loss mitigation actions to provide alternatives to foreclosure upon the default of any HUD-insured mortgage but expressly excludes from such required actions the assignment of mortgages to the Secretary. *See id.* § 1715u(a). Notably, the new Section 230 provides that "[n]o provision of this chapter, or any other law, shall be construed to require the Secretary to provide an alternative to foreclosure for mortgagees with mortgages ... insured by the Secretary under this chapter, or to accept assignments of such mortgages." *Id.* § 1715u(f). The section also provides that "[n]o decision by the Secretary to exercise or forego exercising any authority under this section shall be subject to judicial review." *Id.* § 1715u(d).

Additionally, Section 407 of the Downpayment Act amended Section 204(a) of the National Housing Act, 12 U.S.C. § 1710(a), to authorize the Secretary to pay insurance benefits to a mortgagee in recompense for actions taken to provide alternatives to foreclosure of a defaulted mortgage, but excluded from those recom-

---

1. The district court concluded that Congress, in enacting the statutory changes in 1980, did not intend the amendments to supersede the Amended Stipulation's requirement that HUD continue to provide the mortgage assignment program or an equivalent substitute. *See Ferrell*, 560 F.Supp. at 1360. In the court's view, nothing in the statutory changes *required* the implementation of TMAP or required any modification of the Amended Stipulation. *See id.* The court noted that, "[i]f Congress desires to repeal the [mortgage assignment] program for the future, it certainly can do so." *Id.* at 1372. However, until that time, the court's ruling precluded HUD from providing any program less advantageous to mortgagors than the assignment program.

2. Under a partial claim program, HUD would pay a partial claim to a mortgagee that agrees to apply the payment to a mortgage that is in default; the mortgagor would then agree to repay HUD for the amount of the partial claim payment. *See* 12 U.S.C. § 1715u(b) (Supp.1999).

pensable actions the assignment of a mortgage to the Secretary.

As of April 26, 1996, the effective date of the Downpayment Act, HUD stopped accepting applications for mortgage assignments. HUD then promulgated an interim regulation, effective August 2, 1996, establishing a comprehensive approach to foreclosure avoidance and loss mitigation. In accordance with the Downpayment Act's amendments to the National Housing Act, the interim regulation provided for a variety of foreclosure avoidance and loss mitigation techniques, including special forbearance plans, loan modifications, partial claims, pre-foreclosure sales, and deeds in lieu of foreclosure. *See* 61 Fed. Reg. 35014 (July 3, 1996). The regulation encouraged private lenders to use these techniques with mortgagors in default and made available insurance benefits to lend-

ers whose efforts result in outcomes other than foreclosure.[3]

## B. Proceedings in the District Court

On September 27, 1996, HUD filed a motion to vacate its obligation under the Amended Stipulation to operate the mortgage assignment program or an equivalent substitute. On October 2, 1996, the plaintiffs filed a motion to hold HUD in civil contempt for failing to comply with the Amended Stipulation. The plaintiffs' motion included a request that the district court order HUD to reinstate the assignment program or an equivalent substitute pending the court's ruling on HUD's motion to vacate the Amended Stipulation. The district court treated the request for reinstatement as a motion for a preliminary injunction and agreed to rule first on that issue while the other motions remained under consideration.

---

**3.** Since this appeal was filed, Congress has enacted additional legislation that bears on this litigation. On October 21, 1998, Congress enacted the Veterans Affairs and HUD Appropriations Act, Pub.L. No. 105–276, 112 Stat. 2461 (Oct. 21, 1998) ("the Appropriations Act").

The new Appropriations Act further amended Section 204 of the National Housing Act (12 U.S.C. § 1710). The new Section 204(a)(1)(A) (12 U.S.C. § 1710(a)(1)(A)) provides that the Secretary may pay insurance benefits for the assignment of a mortgage to the Secretary under certain conditions. However, the new Section 204(a)(9) (12 U.S.C. § 1710(a)(9)) makes clear that Congress intended to terminate the mortgage assignment program as it existed under the Amended Stipulation. Section 204(a)(9), titled "Treatment of mortgage assignment program," states:

> Notwithstanding any other provision of law, or the Amended Stipulation entered as a consent decree on November 8, 1979, in Ferrell v. Cuomo, No. 73 C 334 (N.D.Ill.), or any other order intended to require the Secretary to operate the program of mortgage assignment and forbearance that was operated by the Secretary pursuant to the Amended Stipulation and under the authority of section 230 [12 U.S.C.A. § 1715u], prior to its amendment by section 407(b) of The Balanced Budget Downpayment Act, I (Public Law 104–99; 110 Stat. 45) [Pub.L. 104–99, Title IV, § 407(b), Jan. 26, 1996,

110 Stat. 45], no mortgage assigned under this section may be included in any mortgage foreclosure avoidance program that is the same or substantially equivalent to such a program of mortgage assignment and forbearance.

12 U.S.C. § 1710(a)(9) (Supp.1999).

The new Section 204(a)(2) (12 U.S.C. § 1710(a)(2)) largely repeats the provisions of the former Section 204(a), authorizing HUD to pay insurance benefits to mortgagees that engage in loss mitigation efforts, including special forbearance, loan modification, and deeds in lieu of foreclosure, but not including assignment of mortgages to the Secretary under Section 204(a)(1)(A) (12 U.S.C. § 1710(a)(1)(A)).

Section 204(f) of the Appropriations Act amends Section 230 of the National Housing Act (12 U.S.C. § 1715u) to *require* mortgagees to engage in loss mitigation actions but excludes from such actions the assignment of mortgages to the Secretary under Section 204(a)(1)(A) (12 U.S.C. § 1710(a)(1)(A)). *See* 12 U.S.C. § 1715u(a) (Supp.1999).

In sum, the new Appropriations Act evidences Congress' intent that HUD cease operating the mortgage assignment program previously required by the Amended Stipulation and that mortgagees shoulder a greater burden in assisting mortgagors in financial distress by employing a variety of foreclosure avoidance and loss mitigation techniques, not including assignment of mortgages to the Secretary under the former program.

On November 21, 1996, the district court issued a memorandum opinion and order denying the plaintiffs' request for reinstatement of the assignment program on the ground that the plaintiffs had not presented evidence of irreparable injury, which is required to grant a preliminary injunction. The plaintiffs subsequently filed a renewed motion supported by evidence of irreparable harm that would result from HUD's termination of the assignment program. The district court's grant of this motion is the subject of the present appeal.

**C. Holding of the District Court**

On March 31, 1998, the district court issued a memorandum opinion and order granting a preliminary injunction against HUD. The preliminary injunction required HUD to reinstate "either the assignment program or an 'equivalent' substitute, in the form of a mandatory partial claim program, until further order from [the] court." *Ferrell v. HUD*, No. 73 C 334, 1998 WL 160916, at *8 (N.D.Ill. Mar.31, 1998).

The district court first held as a preliminary matter that, even after Section 407(a) of the Downpayment Act withdrew the express statutory authority for the operation of the mortgage assignment program, HUD still retained the authority to operate the program or an equivalent substitute. The court concluded that, "[a]lthough statutory authority to operate the assignment program is no longer found in 12 U.S.C. § 1710(a), such authority may be found in other statutory provisions." *Ferrell*, 1998 WL 160916, at *5. Specifically, the court found that 42 U.S.C. § 1441 and 42 U.S.C. § 3535, when read together, provide authorization for HUD's continued op-

eration of the assignment program.[4] The court further concluded that HUD also retains statutory authority to operate an equivalent substitute in the form of a mandatory partial claim program pursuant to 12 U.S.C. § 1715u(b).

The district court then addressed a second preliminary issue—whether the court had the power to order HUD to comply with the Amended Stipulation, given that the Downpayment Act both specifically precludes judicial review of any decision by the Secretary regarding assistance to mortgagors in default, *see* 12 U.S.C. § 1715u(d) (Supp.1999), and provides that no law shall be construed to require the Secretary to provide an alternative to foreclosure or to accept mortgage assignments, *see id.* § 1715u(f). The court held that the Downpayment Act did not alter HUD's obligation to seek modification of the Amended Stipulation by the court before terminating the assignment program. *See Ferrell*, 1998 WL 160916, at *5. The court emphasized that "court orders remain effective until they are modified by the court" and that litigants must observe the proper judicial procedures by moving to vacate orders, even when such orders are void. *Id.*

The district court then reached the issue whether to grant a preliminary injunction requiring HUD to reinstate the mortgage assignment program or an equivalent substitute. The court concluded that the plaintiffs had satisfied the standard for a preliminary injunction by demonstrating some likelihood of success on the merits, the absence of an adequate remedy at law, and irreparable harm if the preliminary injunction were not granted. First, the court noted that the plaintiffs had submitted compelling and unrebutted evidence of

---

4. 12 U.S.C. § 1441 declares the national housing policy "goal of a decent home and a suitable living environment for every American family" and directs HUD to exercise its powers, duties, and functions consistently with that policy. 42 U.S.C. § 3535 provides HUD with general authority to "make such rules and regulations as may be necessary to

carry out [the Secretary's] functions, powers, and duties," authorizes the Secretary to sell or exchange securities or obligations, and permits the Secretary to consent to the modification of any term of any contract or agreement to which he is a party or which has been transferred to him. *See id.* § 3535(d), (i)(3), (i)(5).

irreparable injury to class members who would lose their homes if the assignment program were not reinstated. Second, the court found that no adequate remedy at law exists for the loss of one's home due to the denial of foreclosure assistance. Third, the court found that the plaintiffs were likely to prevail on the merits of their contempt motion, given HUD's failure to petition the court for modification of the Amended Stipulation before terminating the assignment program. *See id.* at *7–8. The district court therefore granted the plaintiffs' motion for a preliminary injunction requiring HUD to reinstate the assignment program or an equivalent substitute in the form of a mandatory partial claim program until further order from the court. *See id.* at *8.

## II

## ANALYSIS

### A. Applicable Standards

■ When deciding whether to grant or deny a preliminary injunction, a district court must consider whether the moving party has demonstrated (1) some likelihood of prevailing on the merits, (2) the absence of an adequate remedy at law, and (3) irreparable harm if preliminary relief is not granted. *See Grossbaum v. Indianapolis–Marion County Bldg. Auth.*, 100 F.3d 1287, 1291–92 (7th Cir.1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997); *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1067 (7th Cir.1994). If the court is satisfied that these factors have been established, the court must then balance the harms to both parties using a "sliding scale" analysis: the greater the moving party's likelihood of prevailing on the merits, the less strongly it must show that the balance of harms weighs in its favor. *See Storck U.S.A., L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir.1994); *see also AlliedSignal, Inc. v. B.F. Goodrich Co.*, 183 F.3d 568 at 573–74 (7th Cir. 1999); *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1453 (7th Cir.1995). The court

must also consider the public interest by weighing the effect that either granting or denying the injunction will have on non-parties. *See Erickson*, 13 F.3d at 1067.

■ When reviewing a grant or denial of a preliminary injunction, we review the district court's findings of fact for clear error and its discretionary balancing of factors for abuse of discretion. *See Grossbaum*, 100 F.3d at 1292. The district court's legal conclusions are subject to de novo review. *See id.*

### B. Likelihood of Prevailing on the Merits

#### 1.

We note at the outset that the substantive "merits" of this case boil down to the basic question whether HUD should be required to continue operating the mortgage assignment program as it existed under the Amended Stipulation. The district court defined the "merits" as the plaintiffs' contempt motion. *See Ferrell*, 1998 WL 160916, at *7. Accordingly, in determining the plaintiffs' likelihood of prevailing on the merits thus defined, the district court focused on HUD's procedural shortcomings in failing to move promptly to vacate the Amended Stipulation before terminating the assignment program. The court found that the plaintiffs would likely prevail on the issue of contempt, given HUD's "blatant disregard of the court's order without seeking prior vacation of the order." *Id.* at *8.

We believe that, in assessing the probability of success on the merits, the district court should have focused on the plaintiffs' ultimate request that HUD continue to operate the mortgage assignment program or an equivalent substitute in accordance with the Amended Stipulation. It is the likelihood of prevailing on the merits of this request that might justify a preliminary injunction requiring HUD to reinstate the program pending resolution of the underlying motions. Even if HUD might be found in contempt for its delay in

seeking modification of the Amended Stipulation, this shortcoming would not justify a preliminary injunction unless it is also true that the plaintiffs have some likelihood of prevailing on the ultimate issue of HUD's obligation to continue the assignment program. If there is no likelihood that HUD can be required to continue the program, then a preliminary injunction cannot be sustained even if HUD's actions warrant a finding of contempt.[5]

### 2.

■ With these considerations in mind, we turn now to the issue whether the plaintiffs have any likelihood of prevailing on the merits of their claim that HUD must continue the mortgage assignment program in accordance with the Amended Stipulation. We therefore must first determine whether Congress, in enacting the Downpayment Act, withdrew HUD's statutory authority to operate the assignment program.

Various provisions of the Downpayment Act manifest Congress' intent to terminate the mortgage assignment program required by the Amended Stipulation. Section 407(b) of the Downpayment Act amended Section 230 of the National Housing Act (12 U.S.C. § 1715u), which had previously provided the authority for HUD's operation of the mortgage assignment program. Although the new Section 230 permits mortgage assignments under certain limited circumstances, *see* 12 U.S.C. § 1715u(c), Congress made clear in other provisions of the amended Section 230 that it wanted HUD to terminate the mortgage assignment program previously operated pursuant to the Amended Stipulation and under the authority of the former Section 230. Specifically, the amended Section 230 provides that no law shall be construed to require the Secretary to provide an alternative to foreclosure or to accept mortgage assignments. *See id.*

§ 1715u(f). Section 230 also precludes judicial review of any decision by the Secretary to exercise or forgo exercising any authority under the section. *See id.* § 1715u(d). Moreover, the amended provisions require mortgagees to take certain foreclosure avoidance and loss mitigation actions but expressly exclude from those required actions the assignment of mortgages to the Secretary. *See id.* § 1715u(a).

Additionally, Section 407(a) of the Downpayment Act amended Section 204(a) of the National Housing Act (12 U.S.C. § 1710(a)) to authorize HUD to pay insurance benefits to mortgagees who take foreclosure avoidance actions but excluded from such recompensable actions the assignment of mortgages to the Secretary.

We read these provisions of the Downpayment Act as expressing Congress' intent to remove the previous statutory authority for operation of the mortgage assignment program and to establish a new approach to assisting mortgagors in default. Indeed, the district court acknowledged that Section 204(a) of the National Housing Act (12 U.S.C. § 1710(a)), as amended by Section 407(a) of the Downpayment Act, no longer authorizes the operation of the mortgage assignment program. *See Ferrell,* 1998 WL 160916, at *4.

### 3.

■ We turn now to the plaintiffs' contention, and the district court's holding, that other statutory provisions left intact by the Downpayment Act provide sufficient statutory authority for the continued operation of the mortgage assignment program. We are unpersuaded that the general authority conferred by 42 U.S.C. § 1441 and 42 U.S.C. § 3535 is sufficient to support HUD's continued operation of the assignment program. Those provisions, in very general terms, direct HUD

---

**5.** We note that the merits of HUD's motion to vacate its obligation under the Amended Stipulation are the same as the merits of the plaintiffs' motion to require HUD to continue the mortgage assignment program; the two motions are opposite sides of the same coin.

to exercise its powers consistently with national housing policy and authorize HUD to make such rules and regulations as are necessary to carry out its duties. We believe that a far more reasonable interpretation of the statutory scheme is to conclude that Congress expected the more particular provision to govern the more general. Indeed, to conclude that Congress, in withdrawing the specific statutory authority for the assignment program by amending Section 230 of the National Housing Act, still intended that HUD retain the authority to operate the program under these other general provisions would impute to Congress—undeservedly—uncertainty and confusion in articulating national housing policy that the statutory text, fairly read, simply does not convey.

 The plaintiffs next submit, and the district court found, that, even if the Downpayment Act removed HUD's statutory authority to operate the assignment program, HUD still retains authority to operate an "equivalent substitute" in the form of a mandatory partial claim program under § 407(b) of the Downpayment Act (12 U.S.C. § 1715u(a), which is now codified at 12 U.S.C. § 1715u(b) (Supp.1999)). We cannot accept this argument. Section 1715u(b) of Title 12 states that the "Secretary *may* establish a program for payment

of a partial claim to a mortgagee *that agrees* to apply the claim amount to payment of a mortgage...." *Id.* (emphasis added). This statutory language does not support the plaintiffs' argument that HUD is empowered to structure a partial claim program as a mandatory program. The district court and all parties seem to agree that the authority granted to HUD under this subsection is permissive, not mandatory, in nature. From HUD's perspective, the section permits—but does not require—the Secretary to administer such a program.[6] Secondly, from the perspective of the mortgagee, such a program hardly would be mandatory. The Secretary must supply sufficient economic incentive to make acceptance of the partial payment advantageous to the mortgagee. In short, the authority, and the obligations, of the Secretary under the newly enacted provisions are not the same as those under the earlier statutory scheme that the Amended Stipulation was intended to enforce.

**4.**

 We conclude that Congress' enactment of the Downpayment Act has rendered HUD's continued operation of the mortgage assignment program statutorily unauthorized.[7] This court has recognized

---

6. In the district court's view, this authority permits HUD to structure a mandatory program "which would provide relief as equivalent *as possible* to the assignment program, in fulfillment of HUD's obligation under the Amended Stipulation." *Ferrell*, 1998 WL 160916, at *5 (emphasis added). As even the district court's own language necessarily admits, the new legislation does not mandate the establishment of a program that would comply with the Amended Stipulation.

7. Our conclusion is confirmed by Congress' recent enactment of the Appropriations Act, which contains a provision specifically addressing the fate of the mortgage assignment program. In 12 U.S.C. § 1710(a)(9) (Supp. 1999), Congress made specific reference to the Downpayment Act's withdrawal of authority for the mortgage assignment program and made clear its intent that HUD no longer operate the assignment program previously required by the Amended Stipulation. Al-

though the newly amended Section 204(a)(1)(A) of the National Housing Act (12 U.S.C. § 1710(a)(1)(A)) permits the Secretary to accept mortgage assignments under certain circumstances, § 1710(a)(9) clarifies that such assignments are not part of the old mortgage assignment program or any equivalent program. We understand this provision to voice Congress' intent that no law or order, nor the Amended Stipulation, does anything to bring back the mortgage assignment program (or an equivalent substitute) that was terminated by the Downpayment Act.

Moreover, the Appropriations Act's amendments to Section 204(a)(2) of the National Housing Act (12 U.S.C. § 1710(a)(2)) contradict the plaintiffs' argument that HUD retains authority to operate an "equivalent substitute" for the assignment program in the form of a mandatory partial claim program. 12 U.S.C. § 1710(a)(2) provides that the Secretary may pay insurance benefits to mortgag-

the principle that a change in the law can require modification of a consent decree. *See David B. v. McDonald*, 116 F.3d 1146, 1149–50 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 692, 139 L.Ed.2d 638 (1998); *Ferrell*, 743 F.2d at 464 (citing *System Federation No. 91 v. Wright*, 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961)). Indeed, the Supreme Court has held that "[a] consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 388, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). In this case, the amendments to the National Housing Act constituted a change in the law that has made HUD's continued compliance with the Amended Stipulation an impossibility. We therefore hold that there is no likelihood of the plaintiffs' prevailing on the merits of their motion to require HUD to reinstate the assignment program. Because we hold that the plaintiffs have no likelihood of success on the merits, we need not review the district court's findings regarding irreparable harm or the absence of an adequate remedy at law in order to conclude that the issuance of the preliminary injunction was erroneous. The district court's grant of a preliminary injunction must be reversed.

### 5.

■ HUD's delay of almost eight months after Congress passed the Downpayment Act before petitioning the district court for modification of the Amended Stipulation gives us pause. However, HUD's delay in seeking modification of the consent decree cannot justify a preliminary injunction requiring HUD to do something that it no longer has the statutory authority to do. *See System Federation No. 91*, 364 U.S. at 651, 81 S.Ct. 368; *Ferrell*, 743 F.2d at 464. Nor, under the circumstances presented here, does it war-

rant the imposition of a contempt citation against HUD. *See Collins v. Barry*, 841 F.2d 1297, 1300 (6th Cir.), *cert. denied,* 488 U.S. 826, 109 S.Ct. 75, 102 L.Ed.2d 52 (1988). The purposes of a civil contempt order are to "coerce compliance with the underlying order and/or to compensate the complainant for loss sustained by disobedience." *Blocksom & Co. v. Marshall*, 582 F.2d 1122, 1124 (7th Cir.1978). When the underlying order is erroneously issued or is no longer valid, a civil contempt order would serve neither of those purposes. *See id.*; *see also Squillacote v. Local 248, Meat & Allied Food Workers*, 534 F.2d 735, 746 (7th Cir.1976); *Lewis v. S.S. Baune*, 534 F.2d 1115, 1119 (5th Cir.1976). Moreover, the plaintiffs' contempt motion was part and parcel of its effort to enforce the Amended Stipulation and to receive compensation for HUD's termination of the assignment program. Now that we have resolved in HUD's favor the question of HUD's obligation to continue the assignment program under the Amended Stipulation, a contempt order would not be appropriate.

### Conclusion

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings.

Reversed and Remanded

---

ees in recompense for various loss mitigation actions taken to provide an alternative to foreclosure. Importantly, the provision explicitly states that no action or failure to act by either the Secretary or a mortgagee under that paragraph shall be subject to judicial review.